Argued and submitted January 8,
peremptory writ to issue April 8, 1980

## STATE ex rel SWEERE,
*Plaintiff-Relator,*
*v.*
## CROOKHAM,
*Defendant.*

(SC 26515)

609 P2d 361

Frank M. Parisi, of Spears, Lubersky, Campbell & Bledsoe, Portland, argued the cause for plaintiff-relator. With him on the briefs was John M. Berman, Portland.

Rodney H. Grafe, certified law student, argued the cause for defendant. With him on the brief was Chris L. Mullman, of Ragen, Roberts, O'Scannlain, Robertson & Neill, Portland.

DENECKE, C. J.

## DENECKE, C. J.

The issue in this mandamus proceeding is whether the Oregon long-arm statute, ORS 14.035, permits an Oregon court to acquire personal jurisdiction over plaintiff/relator Joseph Sweere.

The underlying litigation involves a contractual dispute between Rusth Industries, an Oregon corporation, and W-P Distributors, a North Dakota corporation, with a principal place of business in Minnesota. The complaint alleges that Rusth appointed W-P as a distributor of Rusth products in a territory outside the State of Oregon. Pursuant to that agreement W-P purchased a quantity of Rusth products, which were shipped to W-P in Minnesota. A complaint filed by Rusth in Multnomah County Circuit Court seeks damages from W-P for W-P's alleged failure to either pay for or return some of the Rusth merchandise.

The complaint states a separate cause of action against relator Sweere, based upon a personal guaranty executed by the relator. The guaranty states:

"I, Joseph R. Sweere, do personally guarantee that on Monday, 11 December 1978, the 2,695 Strato Therm units in inventory of W-P Distributors, Inc. will be shipped back to Rusth Industries, Ltd, in Beaverton, Oregon.

"Freight on the shipment will be prepaid by W-P Distributors to Beaverton, Oregon or funds for any units not shipped will be remitted. * * *."

The copy of the underlying agreement attached to the complaint names the relator as the general manager of W-P. Other than that, the record does not indicate that the relator had any financial interest in W-P.

The relator was personally served in Minnesota. He made a special appearance in the circuit court and moved to quash service for lack of personal jurisdiction. In his supporting affidavit the relator stated: that the president of Rusth drafted the guaranty in Minnesota; that Sweere signed it in Minnesota and hand-delivered it to Rusth officers in Minnesota; that

when the guaranty was signed the merchandise was in Minnesota; that the relator owned no real property in Oregon; and that he had been physically present in Oregon only once, "prior to and independent of" the execution of the guaranty. No counter-affidavits were filed.

The court denied the motion to quash. Relator sought a writ of mandamus to compel Judge Crookham to quash service. We issued an alternative writ.

■ Every challenge to the jurisdiction of a state court over a nonresident defendant presents two questions. First, does the long-arm statute provide that the court has jurisdiction? If so, would the assertion of jurisdiction over that defendant offend the due process rights guaranteed by the 14th Amendment? *State ex rel Academy Press v. Beckett,* 282 Or 701, 708, 581 P2d 496 (1978). If the statute did not confer jurisdiction there would be no occasion to reach the constitutional issue.

In this case the applicable statutory provision is ORS 14.035(1)(a), which provides:

"Any person, firm or corporation whether or not a citizen or a resident of this state, who, in person or through an agent, does any of the actions enumerated in this subsection, thereby submits such person and, if an individual, his personal representative to the jurisdiction of the courts of this state, as to any cause of action or suit or proceeding arising from any of the following:

"(a) The transaction of any business within this state;

"* * * * *.

Previously, we have held that the transaction of business within this state includes actions taken elsewhere which cause important business consequences in this state. In *Academy Press, supra,* an Oregon author sued an Illinois publisher, contending that the publisher breached an agreement to publish the author's book. No representative of the publisher

ever set foot in Oregon, and the contract was negotiated in Chicago. At the direct request of the publisher, however, the author invested 480 hours revising his manuscript while living in Eugene. We held that the publisher's demands for revisions caused sufficient economic consequences in Oregon so that the publisher could be held to have transacted business in this state, within the meaning of ORS 14.035(1)(a). 282 Or at 713.

In *State ex rel White Lbr. v. Sulmonetti,* 252 Or 121, 448 P2d 571 (1968), a Florida lumber wholesaler contacted an Oregon supplier by telephone, and ordered twenty railroad cars of plywood to be manufactured to the buyer's specifications. The Oregon supplier instructed a mill in Grants Pass to begin work on the order. After receiving and paying for one carload of plywood the buyer suspended payment, complaining that the plywood did not conform to specifications. The supplier filed suit for damages in Oregon. We sustained jurisdiction over the buyer, on grounds that the telephone order produced significant economic consequences in Oregon. 252 Or at 124, 126.

■    In order to invoke the jurisdiction of any court a party must allege such facts as are necessary to establish that the court has jurisdiction to act. *Parmele v. Mathews,* 233 Or 616, 620, 379 P2d 869 (1963). The burden of coming forward with the "jurisdictional facts" lies upon the party asserting jurisdiction. *McNutt v. General Motors Accept. Corp.,* 298 US 178, 189, 56 S Ct 780, 80 L Ed 1135 (1936); *Parmele, supra,* 233 Or at 620. In this case the jurisdictional fact which Rusth must establish is that the relator's execution of a personal guaranty in Minnesota produced important economic consequences in Oregon.[1]

The guaranty could not have been the inducement for Rusth to sign a contract with W-P,

---

[1] We held in *Academy Press, supra,* that the measure of the importance of the local consequences of action taken elsewhere by a nonresident of this state is the importance of the consequences to the Oregon plaintiff. 282 Or at 713.

because the signing of the contract and the shipment of the merchandise to Minnesota preceded the execution of the guaranty by several months. Rusth may have lost as much as $5,038 but there is no evidence this would not have occurred if Sweere had not executed the guaranty.[2]

The respondent contends that even if the relator is not subject to jurisdiction on account of his own actions, the guarantor of a company that is transacting business in Oregon should also be deemed to be transacting business in Oregon. The respondent relies on dictum from our opinion in *State ex rel Ware v. Hieber,* 267 Or 124, 133, 515 P2d 721 (1973), where we said: "[W]hen the parties to the underlying transaction which was guarantied were transacting business in the forum state the guarantors also would be found to be transacting business within the forum state."

*Ware* involved a franchise arrangement between Black Diamond, an Oregon motor home manufacturer, and Keller Enterprises, a Nevada corporation which sold motor homes in California. Jay and Dulcita Ware were officers and majority shareholders of Keller Enterprises. Mr. Ware came to Oregon to evaluate Black Diamond's operation and to negotiate a dealer franchise. After Black Diamond granted the franchise Mr. Ware drove a motor home back to California. Black Diamond became suspicious of Keller Enterprises and required a guaranty from the Wares as a condition to continuing business with Keller. In reliance upon the guaranty Black Diamond continued to sell motor homes to Keller.

Keller defaulted in its payments for the motor homes and Black Diamond brought suit, in Oregon, on the guaranty. The Wares defended on the ground that Oregon courts lacked jurisdiction over them. We rejected this defense for a number of reasons.

---

[2] The complaint in the underlying litigation alleges that Sweere owes $5,038.44 on the guaranty, an amount equivalent to the reasonable value of the merchandise not returned.

First, we held that Keller Enterprises was transacting business in Oregon, and that "the personal guaranty of the Wares must be considered as one aspect of the entire course of business between Keller Enterprises and Black Diamond." 267 Or at 132-33. Second, the guaranty caused important business consequences in Oregon, because Black Diamond made the sale of vehicles to Keller conditional upon its execution. *Id.* at 133. We also noted that Mr. Ware came to Oregon to commence the transaction and that Oregon was a convenient place to try the issues arising out of the dispute. *Id.*

■ The most important distinction between *Ware* and the present case is that here the record does not show that Rusth Industries relied on the guaranty in doing business with W-P. While the execution of the Guaranty in *Ware* caused an Oregon company to continue a franchise agreement which otherwise might have been terminated, there is no evidence that Sweere's guaranty caused any business consequences in Oregon.

Another distinction is that the Wares were officers and majority shareholders of Keller Enterprises, whereas Sweere is merely an employe of W-P. Because Keller transacted business in Oregon, and because the Wares exercised complete control over the affairs of Keller, we held that it would be proper to "pierce the veil" by imputing the contacts between Oregon and the corporation to the Wares. 267 Or at 132-33. In the case at bar, however, the record does not show that the relator had any control over, or interest in W-P, other than as an employe. In these circumstances it would be unfair to impute the contacts between Oregon and W-P to the relator.

■ Our statement in *Ware,* to the effect that the contacts between the forum state and a foreign corporation may be attributed to the corporation's guarantors, must be limited to circumstances in which the guaranty plays a more integral part in causing or

promoting significant economic consequences in Oregon than it did in this case. As a general proposition the statement is too broad, because it would sanction the assertion of jurisdiction by an Oregon court over a nonresident who never set foot in Oregon, and whose extra-territorial acts caused no important business consequences here.

Decisions from other jurisdictions support our conclusion that Oregon lacks jurisdiction over the relator. Decisions construing the Illinois long-arm statute are particularly persuasive because ORS 14.035 was modeled after the Illinois statute. *Academy Press, supra,* 282 Or at 708. In *Liberty Leasing Co., Inc. v. Milky Way Stores, Inc.,* 352 F Supp 1210 (ND Ill 1973), an Illinois corporation brought an action against several Utah defendants, including a debtor under a lease agreement and his guarantor. The court dismissed the complaint against the guarantor, noting that "The only contact it has had with Illinois is to have been guarantor on a lease agreement executed in Utah between a Utah company and an Illinois leasing company." 352 F Supp at 1211.

The Minnesota Supreme Court, construing a long-arm statute substantially identical to ORS 14.035(1)(a), held in *All Lease Company v. Betts,* 294 Minn 473, 199 NW2d 821 (1972), that a Pennsylvania resident whose only contact with Minnesota was as guarantor of a lease agreement would not be subject to jurisdiction in that state. Thus, if the positions of the parties in this litigation were reversed, a Minnesota court would have to decline jurisdiction over an Oregonian whose Minnesota contacts were no greater than the relator's connections in this state.

The courts in *Liberty Leasing* and *All Lease Company, supra,* based their holdings on the Fourteenth Amendment, rather than on their respective long-arm statutes. Nevertheless, these decisions are relevant, because of the factual similarities, and

because the constitutional limitations recognized by the Illinois and Minnesota decisions apply equally to Oregon courts.

Plaintiff contends a change in the law created by the adoption of the Rules of Civil Procedure is applicable and if there was any doubt under the old statute about jurisdiction over the defendant, the change conclusively provides jurisdiction. The rules were effective January 1, 1980, after the date of the hearing in the trial court and the filing of the mandamus in this court. The rules provide they are applicable "to all actions pending at the time of or filed after their effective date, except to the extent that in the opinion of the court their application in a particular action pending when the rules take effect would not be feasible or would work injustice, in which event the former procedure applies."

■ We do not determine whether the rules are applicable to this proceeding. Rather, we hold that because of the due process restrictions of the Fourteenth Amendment, the rule cannot be constitutionally applied to provide that the plaintiff can obtain jurisdiction over defendant. *World-Wide Volkswagen Corp. v. Woodson,* 444 US 286, 100 S Ct 559, 62 L Ed2d 490 (1980).

Rule 4 provides:
"A court of this state having jurisdiction of the subject matter has jurisdiction over a party served in an action pursuant to Rule 7 under any of the following circumstances:
"* * * * *.
"E.(1) Arises out of a promise, made anywhere to the plaintiff or to some third party for the plaintiff's benefit, by the defendant to perform services within this state, to pay for services to be performed in this state by the plaintiff, or to guarantee payment for such services; or
"* * * * *."

The phrase, "to guarantee payment for such services" was probably intended to incorporate the statement in *State ex rel Ware v. Hieber, supra,* 267 Or 124, which we previously discussed and which we observed was, as a general proposition, too broad. As we just previously stated, the courts in *Liberty Leasing Co., Inc. v. Milky Way Stores, Inc., supra,* 352 F Supp 1210, and *All Lease Company v. Betts, supra,* 294 Minn 473, held that if the only contact with the state seeking jurisdiction was the execution of a guaranty that state could not because of the due process clause of the Fourteenth Amendment, gain jurisdiction. We likewise so hold.

A peremptory writ shall issue, ordering the trial court to quash service on the relator.