Argued and submitted December 4, 1981,
reversed June 16, 1982

PERKINS,
*Respondent,*
*v.*
BARTLETT CONSTRUCTION CO., INC.,
*Appellant.*

(No. 39-654, CA A20667)

646 P2d 672

Thomas J. Moore, Hillsboro, argued the cause for appellant. With him on the briefs were Mervin W. Brink and Brink, Moore, Brink & Peterson, Hillsboro.

William F. Thomas, Portland, argued the cause and filed the brief for respondent.

Before Richardson, Presiding Judge, and Thornton and Van Hoomissen, Judges.

VAN HOOMISSEN, J.

## VAN HOOMISSEN, J.

Defendant appeals from a judgment order in favor of plaintiff entered after a jury trial. The dispositive issue is whether the trial court properly exercised personal jurisdiction over defendant.

Defendant is a closely held Texas corporation. In 1978, defendant's president, Jack Bartlett, was hired by Fanz International to manage that corporation's drilling operations in Nigeria. W. A. Baggett also worked for Fanz in Nigeria. Baggett had formerly worked with plaintiff in Washington state. Before returning to the United States in April, 1978, Baggett asked Bartlett to contact plaintiff and ask him to come to work in Nigeria. Bartlett called defendant's secretary, Brenda Perdue, from New Orleans and instructed her to contact plaintiff. Perdue called plaintiff's father in Oregon and requested that plaintiff call her· about a job in Nigeria. When plaintiff returned Perdue's call, he was informed that if he was interested in working in Nigeria, Bartlett would contact him. Plaintiff expressed interest. Later, Bartlett called plaintiff from Texas and told him that Baggett needed him in Nigeria. They discussed wages, equipment, working conditions and taxes. Plaintiff was told that he would need a passport and that because of time factors he should go to Seattle to get one. During that conversation, plaintiff accepted defendant's offer to work in Nigeria.

Plaintiff then went to Seattle to obtain a passport. When he returned, he quit his job, sold his truck, purchased clothing and supplies for use in Nigeria and opened a savings account in a local bank. In June, 1978, he flew to Texas and then on to Nigeria, where he worked until November, 1978. He received only one payroll check while in Nigeria. That check, endorsed by plaintiff and forwarded to his parents for deposit, was dishonored and never has cleared. Subsequently, plaintiff brought this action against defendant to collect his unpaid wages. Defendant's motion to quash the summons on the ground that the trial court lacked personal jurisdiction was denied.

Defendant contends that the trial court erred in denying its motion to quash. It argues that because it had

no officers, agents, employees, property, office or business in Oregon, and because no part of the alleged contract was to be performed here, it has not transacted any business in Oregon and that, therefore, the trial court lacked personal jurisdiction over it. Plaintiff contends that his cause of action in Oregon arose as a result of "important consequences" caused by defendant in this state, *i.e.,* as a result of defendant's telephone job offer plaintiff (1) went to Seattle to obtain a passport, (2) quit his job, (3) sold his truck, (4) opened a savings account and (5) prepared for an extended trip to Nigeria.

Resolution of the jurisdictional issue presented here is controlled by Oregon's former long-arm statute, ORS 14.035,[1] which provided:

"(1)  Any person, firm or corporation whether or not a citizen or a resident of this state, who, in person or through an agent, does any of the actions enumerated in this subsection thereby submits such person * * * to the jurisdiction of the courts of this state, as to any cause of action or suit or proceeding arising from any of the following:

"(a)  The transaction of any business within the state * * *.

" * * * * * ."

Under that statute, the transaction of business within this state includes actions taken elsewhere which produce important economic consequences in this state. *State ex rel Sweere v. Crookham,* 289 Or 3, 6, 609 P2d 361 (1980); *State ex rel Academy Press v. Beckett,* 282 Or 701, 713-14, 581 P2d 496 (1978); *State ex rel White Lbr. v. Sulmonetti,* 252 Or 121, 125, 448 P2d 571 (1968). The question then is whether, by offering plaintiff a job in Nigeria, defendant caused important economic consequences to occur in Oregon.[2]

---

[1] ORS 14.035 was repealed by Or Laws 1979, ch 289, § 199. The statute, however, was not repealed until after defendant had been served with a copy of the complaint on May 14, 1979. On June 8, 1979, relying on ORS 14.035, defendant move to quash service of summons, alleging the trial court lacked personal jurisdiction.

[2] The traditional analysis of the state's long-arm statute has been to determine whether jurisdiction is provided by statute and, if so, then to determine whether the exercise of that statutory jurisdiction falls within the constitutional limits of due process. *See State ex rel Sweere v. Crookham,* 289 Or 3, 6, 609 P2d 361 (1980); *State ex rel Academy Press v. Beckett,* 282 Or 701, 708, 581 P2d 496 (1978);

In *State ex rel White Lbr. v. Sulmonetti, supra,* a Florida lumber wholesaler contacted an Oregon supplier by telephone and ordered 20 railroad cars of specially manufactured plywood. The Oregon supplier instructed a Grants Pass mill to begin work on the order. After receiving and paying for one carload, the buyer suspended payment, complaining the plywood did not conform to specifications. The Supreme Court held that under those circumstances the telephone order had produced significant economic consequences in Oregon. 252 Or at 124, 126. In *State ex rel Academy Press v. Beckett, supra,* an Oregon writer sued an Illinois publisher, contending that the publisher breached an agreement to publish the writer's book. At the direct request of the publisher, and while living in Oregon, the writer spent 480 hours revising his manuscript. The Supreme Court held that the publisher's demand for revisions produced significant economic consequences in Oregon and that the publisher had transacted business in Oregon within the meaning of ORS 14.035(1)(a). 282 Or at 713.

Plaintiff misapprehends the nature of the economic consequences that must occur in this state before a nonresident defendant will be deemed to have transacted business within the state. The economic consequences of the telephone transaction here are quantitatively dissimilar to those in *Sulmonetti* and *Academy Press.* In *Sulmonetti,* the transaction involved 20 cars of plywood to be specially manufactured in Oregon. In *Academy Press* the plaintiff spent 480 hours revising his manuscript. Here, plaintiff performed no services for the nonresident defendant within Oregon. We conclude that plaintiff's unilateral acts in buying clothes and supplies for work in Nigeria and selling his truck in preparation for the trip do not constitute the important economic consequences necessary for a finding of jurisdiction under former ORS 14.035(1)(a).[3] The logical extension of plaintiff's contention is that when-

---

*Resorts Marketing v. Zuckerman,* 52 Or App 589 at 592, 628 P2d 770 (1981). If, as here, jurisdiction is not provided by statute, it is unnecessary to address the constitutional question.

[3] Plaintiff contends that *Resorts Marketing v. Zuckerman, supra* n 2, controls resolution of the jurisdictional question here. *Resorts Marketing* has no application here, because it was decided under ORCP 4L.

ever an Oregon worker accepts employment outside of Oregon, the nonresident employer is subject to the jurisdiction of the Oregon courts. Our former long-arm statute does not permit that result. Therefore, we do not reach the constitutional issue. *See World-Wide Volkswagen Corp. v. Woodson,* 444 US 286, 100 S Ct 559, 100 S Ct 580, 62 L Ed 2d 490 (1980).

Reversed.[4]

---

[4] Because we hold that the trial court lacked personal jurisdiction over defendant, we need not address defendant's other assignments of error.