Argued and submitted September 28, 1983, affirmed in part, reversed in part and all cases remanded December 19, 1984, reconsideration denied February 8, petition for review allowed June 4, 1985

FIRST INTERSTATE BANK OF OREGON,
fna First National Bank of Oregon,
*Appellant,*

*v.*

TEX-ARK FARMS, LTD. et al,
*Defendants,*
N-G-M, LTD. et al,
*Respondents.*

(A8107-04620; CA A26198 (Control))

FIRST INTERSTATE BANK OF OREGON,
fna First National Bank of Oregon,
*Appellant,*

*v.*

MOPAK FARMS, LTD. et al,
*Defendants,*
PACK et al,
*Respondents.*

(A8107-04621; CA A26199)

FIRST INTERSTATE BANK OF OREGON,
fna First National Bank of Oregon,
*Appellant,*

*v.*

WAYNE FARMS, LTD. et al,
*Respondents,*
SUNRIVER FARMS, INC.,
*Defendant.*

(A8107-04622; CA A26200)

FIRST INTERSTATE BANK OF OREGON,
fna First National Bank of Oregon,
*Appellant,*

*v.*

VISTA PROPERTIES et al,
*Respondents,*

SUNRIVER FARMS, INC.,
*Defendant.*

(A8107-04623; CA A26201)

FIRST INTERSTATE BANK OF OREGON,
fna First National Bank of Oregon,
*Appellant,*

*v.*

CBS RANCHES, INC.,
*Respondent,*
SUNRIVER FARMS, INC.,
*Defendant.*

(A8107-04624; CA A26202)

FIRST INTERSTATE BANK OF OREGON,
fna First National Bank of Oregon,
*Appellant,*

*v.*

SUNRIVER AG FUND I et al,
*Defendants,*
MIDDLETON et al,
*Respondents.*

(A8107-04625; CA A26203)

FIRST INTERSTATE BANK OF OREGON,
fna First National Bank of Oregon,
*Appellant,*

*v.*

SUNRIVER AG FUND IB et al,
*Respondents,*
SUNRIVER FARMS, INC.,
*Defendant.*

(A8107-04626; CA A26204)

FIRST INTERSTATE BANK OF OREGON,
fna First National Bank of Oregon,
*Appellant,*

*v.*

SUNRIVER AG FUND IA et al,
*Respondents,*

SUNRIVER FARMS, INC.,
*Defendant.*

(A8107-04627; CA A26205)

FIRST INTERSTATE BANK OF OREGON,
fna First National Bank of Oregon,
*Appellant,*

*v.*

SUNRIVER AG LEASING et al,
*Respondents,*
SUNRIVER FARMS, INC.,
*Defendant.*

(A8107-04628; CA A26206)

FIRST INTERSTATE BANK OF OREGON,
fna First National Bank of Oregon,
*Appellant,*

*v.*

GAS PRODUCERS LIQUIDS, INC.,
dba Giles Land and Cattle,
*Respondent,*
SUNRIVER FARMS, INC.,
*Defendant.*

(A8107-04629; CA A26207)
(Cases Consolidated)

692 P2d 678

Douglas M. Ragen, Portland, argued the cause for appellant. With him on the briefs were Michael E. Arthur, William H. Walters and Miller, Nash, Yerke, Wiener & Hager, Portland.

Donald J. Willis, Portland, argued the cause for respondents. With him on the brief were Ridgway K. Foley, Jr., Cynthia S. C. Shanahan and Schwabe, Williamson, Wyatt, Moore & Roberts, Portland.

Before Gillette, Presiding Judge, and Warden and Young, Judges.

GILLETTE, P. J.

### GILLETTE, P. J.

In these 10 consolidated cases, First Interstate Bank of Oregon (Bank) seeks recovery for non-repayment of loans from two corporations and eight limited partnerships (hereinafter guarantors) and 72 limited partners of the eight limited partnerships (hereinafter investors). It alleges that the guarantors guaranteed the loans and that the investors had recourse liability on the guarantees.[1] The trial court dismissed Bank's actions against seven of the guarantors and against all of the investors on the ground that it lacked personal jurisdiction over them.[2] It then entered final judgments. ORCP 67B. Bank appeals, urging that the trial court erred in dismissing the actions. We reverse as to the guarantors and affirm as to the investors.

These actions arise out of two loans that Bank made to Sunriver Farms, Inc., an Oregon corporation (SunOre), for farming ventures in Oregon and Washington. SunOre which is not a party in any of these cases, was a wholly owned subsidiary of Sunriver Farms, Inc., a California corporation (SunCal). SunCal was organized in September, 1979, for the purpose of promoting and managing agricultural tax shelter investments. Fred Behrens and Barry Jones were shareholders, directors, officers and promoters of SunCal. They were also directors of SunOre, and Jones was treasurer and assistant secretary. SunCal organized the tax shelters, and SunOre did the actual farming. Jones moved from California to Boardman and had day to day control of SunOre's operations.

Sometime in the fall of 1979, SunCal assembled a group of investors and investment entities to farm "Sabre Farm," a 20,200 acre farm. Bank had financed the previous owner's operations, but that owner was unable to continue because of substantial losses. SunCal simultaneously organized a second investment group to farm the "3 Wells/100

---

[1] Our designating the limited partnerships and corporations as guarantors for the purposes of this opinion is not intended to imply any conclusion on whether the alleged guarantees are in fact enforceable.

[2] Guarantor Tex-Ark Farms, Ltd. (Tex-Ark), a limited partnership, did not contest personal jurisdiction as to the partnership; it did contest jurisdiction, however, as to the individual partners. The trial court found jurisdiction as to guarantors Mopak Farms, Ltd. (Mopak) and Sunriver Ag Fund I (Ag Fund I).

Circles Farm" (3 Wells), a similar sized farm located in southeastern Washington. The farming ventures and tax shelters. According to the prospectus circulated by SunCal to various investment advisors, investors would derive two benefits from their investments. First, each would be eligible to take deductions on 1979 state and federal income tax returns substantially in excess of the actual capital contributions. Second, all investors would share the profits generated from farming operations and any appreciation in farm land values. SunCal estimated federal tax deductions of up to 240 percent of the amounts invested. In order for investors to receive the tax advantages, they had to be "at risk" for additional amounts beyond their actual investment. IRC § 465(b)(1). The money Bank is seeking to recover in this case is the money for which the individual investors were "at risk" and on the basis of which they took 1979 tax deductions.

SunCal formed four limited partnerships in the fall of 1979 to participate in the Sabre Farm venture: Mopak Farms, Ltd. (Mopak), Wayne Farms, Ltd. (Wayne), Vista Properties (Vista) and Sunriver Ag Fund I (Ag Fund I). SunCal is the general partner of each. In addition, it arranged for Tex-Ark Farms, Ltd. (Tex-Ark), to participate. Tex-Ark is a Texas limited partnership; the others are California limited partnerships. N-G-M, Ltd., a Texas limited partnership, is general partner of Tex-Ark; SunCal was Tex-Ark's crop contractor and agent for these farms.

Bank became involved with the parties when it made loans for the farming operations. Bank designated SunOre to serve as the nominal borrower for the Sabre Farms loans on behalf of a separate limited partnership, Sunriver Farming Partnership (SFP), whose limited partners included the aforementioned five limited partnerships. SunOre was one of SFP's general partners.

Jones, acting for SunCal, executed guarantees of the loan, allegedly on behalf of the five limited partnerships. Behrens, as president of SunCal, signed the SFP agreement on behalf of the limited partnerships. The SFP agreement provided that Mopak, Wayne, Vista, Ag Fund I and Tex-Ark were liable for repayment of the SFP loans in an amount equal to the totals of the amounts that their limited partners were "at risk." This arrangement was completed before Bank made

its first disbursement on the loan on December 7, 1979. Each limited partnership also had an account with Bank.

SunCal simultaneously organized a group of investment entities to farm 3 Wells. It included Mopak and Tex-Ark from the Sabre Farms venture, three additional California limited partnerships, Sunriver Ag Fund IA (Ag Fund IA), Sunriver Ag Fund IB (Ag Fund IB) and Sunriver Ag Leasing (Ag Leasing), and two foreign corporations, CBS Ranches, Inc. (CBS), and Gas Producers Liquids, Inc., dba Giles Land and Cattle (Giles). SunCal was the general partner of each of the new limited partnerships; it was also the managing agent for CBS and Giles. Its authority as managing agent was defined in agricultural management agreements between it and the corporations. Behrens and Jones, on behalf of SunCal, signed promissory notes dated December 21, 1979, and a "Farming Agreement," dated December 15, 1979. Bank was not the lender under these notes, which served to provide interim financing for 3 Wells until other financing could be arranged. SunOre managed the 3 Wells operation, as it did Sabre Farms.

In July, 1980, Bank made an additional loan commitment to SunOre, which included $3,769,634 for 3 Wells. SunCal executed further guarantees to Bank, allegedly on behalf of the 3 Wells entities, in support of that loan. Bank made its first disbursement of the supplemental loan commitment on July 3, 1980. Each 3 Wells limited partnership also had an account with Bank. Each limited partnership involved in either venture, with the possible exception of Vista, filed a certificate as a foreign limited partnership with the Oregon Corporation Commissioner. ORS 69.440(1).[3]

SunOre's operations were not profitable, and it filed for bankruptcy protection in December 1980. Bank then sued the eight limited partnerships and the two corporations on the guarantees, and it sued the investors in the limited partnerships for the amount of their "at risk" liability under the partnership agreements. Tex-Ark did not contest jurisdiction, although its general partner N-G-M did, and the trial court found jurisdiction as to Mopak and Ag Fund I. It dismissed the

---

[3] Bank does not rely on these filings to support the trial court's jurisdiction over the limited partnerships. *See* ORS 69.450(1).

cases as to the other entities and as to the investors.

■ In its analysis, the trial court focused on whether Bank had relied on the alleged guarantees in making its loans, and the parties continue to dispute this point on appeal. The court believed it relevant to whether there is jurisdiction under ORCP 4E(1). *See State ex rel Sweere v. Crookham,* 289 Or 3, 609 P2d 361 (1980). We need not decide the point, however, because we hold that the execution of the guarantees in Oregon by the general partner of the limited partnerships and the authorized agent of the corporations is sufficient to establish Oregon jurisdiction over those entities in an action to enforce the guarantees, regardless of any reliance by Bank.

ORCP 4 provides a number of bases for personal jursidiction over a defendant. The Supreme Court has suggested that it is better to examine the specific jurisdictional bases in the rule before going to the more general provisions of ORCP 4L. *State ex rel Hydraulic Servocontrols v. Dale,* 294 Or 381, 384, 657 P2d 211 (1982). However, in this case the analysis is easier under the broader provision. ORCP 4L provides:

> "A court of this state having jurisdiction of the subject matter has jurisdiction over a party * * * under any of the following circumstances:
>
> "* * * * *
>
> "**L. Other Actions.** Notwithstanding a failure to satisfy the requirement of section B through K of this rule, in any action where prosecution of the action against a defendant in this state is not inconsistent with the Constitution of this state or the Constitution of the United States."

There are five limited partnerships in dispute: Wayne, Vista, Ag Fund IA, Ag Fund IB, and Ag Leasing. SunCal was the general partner of each. The Vista and Wayne limited partnership agreements are similar and confer broad management powers on SunCal, the general partner:

> "The General Partner shall have full, exclusive and complete discretion in the management and control of the business of the Partnership for the purpose herein stated, shall make all decisions affecting the business of the Partnership and may take such action as it deems necessary or appropriate to accomplish the purposes of the Partnership as set forth herein."

Under the respective agreements, SunCal had the duty "to negotiate or supervise the negotiation of all contracts or agreements for the plantings growing, harvesting and sale of crops, and for the purchase, care, lease and sale of real property and other partnership assets * * *." Section 5.03 of the Vista and Wayne agreements empowered SunCal, in order to fulfill its duties:

"(a) to borrow money in such amounts, on such terms and conditions and at such rates as the General Partner deems appropriate, from banks, other lending institutions and any other persons (including, but not limited to, persons or entities affiliated with the General Partner) for any Partnership purpose and, in connection with such loans, to mortgage, pledge, assign or otherwise encumber or alienate any or all of the Partnership assets or income therefrom, and to secure or provide repayment thereof. As between the Partnership and any lender it shall be conclusively presumed that the proceeds of such loan are to be and will be used for the purposes authorized herein;

"* * * * *

"(d) to execute, on behalf of the Partnership, any and all documents or instruments of any kind which the General Partner may deem appropriate in carrying out the purposes of the Partnership, including, without limitation, powers of attorney, sales contracts or other documents or instruments of any kind or character or amendments thereto * * *."

As noted, SunCal was also the general partner of Ag Fund IA, Ag Fund IB, and Ag Leasing. The partnership agreements of these three limited partnerships all conferred broad authority on SunCal:

"11.2.a. Except to the extent otherwise provided herein, the General Partner for, and in the name and on behalf of the Partnership, is hereby authorized:

"* * * * *

"c. to execute any and all agreements, contracts, documents, certifications and instruments necessary or convenient in connection with the managment, maintenance and operation of its property and to employ such persons as are necessary to perform the duties required thereby;

"d. to borrow money and issue evidence of indebtedness necessary, convenient or incidental to the accomplishment of the purposes of the Partnership, and to secure the same by

mortgage, pledge or other lien on any property or other assets of the Partnership;

"e. to execute, in furtherance of any or all of the purposes of the Partnership, any deed, lease, mortgage, deed of trust, mortgage note, promissory note, bill of sale, contract or other instrument purporting to convey or encumber the real or personal property of the Partnership * * *."

 Under Oregon law, a general partner, while conducting partnership business, is the agent for the limited partnership. ORS 68.210(1); ORS 69.350(1). The partnership agreements also gave SunCal broad powers to act. The limited partners do not dispute that, for jurisdictional purposes, it is consistent with due process to impute an agent's acts to the principal. Instead, they essentially contend that the procurement of the loans and the execution of the guarantees were beyond SunCal's authority as their agent and that, therefore, its acts may not be imputed to them. This argument confuses the merits of Bank's claim with the issue of the trial court's jurisdiction. The partnerships put SunCal in the position where it was able to execute guarantees in Oregon with at least a colorable claim to having done so with the partnerships' authority. SunCal represented the partnerships in Oregon; it does not offend due process that they be required to litigate, in an Oregon court, their claims that it exceeded its powers.

 In addition to that foundation for jurisdiction, SunCal's other, admittedly authorized, acts in Oregon are sufficient to confer jurisdiction on Oregon courts to determine all disputes arising out of these enterprises. *Compare Wells Fargo & Co. v. Wells Fargo Exp. Co.,* 556 F2d 406 (9th Cir 1977). SunCal was authorized to act and did act in Oregon on behalf of Vista and Wayne to organize and develop Sabre Farms. It leased Oregon farm land, negotiated loans in Oregon, delivered financial statements and partnership agreements to Bank in Oregon, established bank accounts for Vista and Wayne in Oregon and maintained financial and tax records in Oregon. By their voluntary participation in the Sabre Farm venture, and by the authorized acts of their general agent, SunCal, Vista and Wayne purposefully availed themselves of the privilege of conducting business in Oregon.

 There is also an adequate basis for jurisdiction over those involved only in the Washington operations. SunCal

acted on behalf of the limited partnerships Ag Fund IA, Ag Fund IB and Ag Leasing, pursuant to their respective limited partnership agreements, to negotiate and obtain loans in Oregon for the 3 Wells venture. In order to facilitate financing, it opened bank accounts for these entities at one of Bank's Oregon branches and delivered financial statements and related documentation in support of the loan request to Bank in Oregon. Those acts constitute purposeful use of the benefits and protections of Oregon law. Neither is it unfair to compel the 3 Wells alleged guarantors to defend in Oregon. Each sought to obtain significant financial benefits through that venture, and each may properly be compelled to defend in Oregon as one of the costs of conducting part of that business in Oregon.

■ SunCal was the managing agent for Giles and CBS, the corporations involved in the 3 Wells project. Its "Agricultural Management Agreement" with each provided in part:

> "Manager is authorized as an agent and attorney-in-fact of [Giles/CBS] to carry out the budgets and business plans attached hereto as Exhibit A including all amendments thereto. *This authority includes the power to enter into agreements, and restricted power to arrange loans, credit and borrow money,* sign Bill of Sale drafts on behalf of [Giles/CBS], purchase seed, fertilizer, cattle, etc., enter into leases and rental agreements, pay bills and other operating expenses, and *to sign or endorse any documents on behalf of [Giles/CBS] in pursuance of the foregoing,* and to modify or cancel agreements. The manager will open up a bank account for [Giles/CBS] and be empowered to write checks on said account for the express purpose of conducting the farming business for [Giles/CBS]." (Emphasis supplied.)

"Exhibit A," referred to in section 2 of both agreements, provides in part:

> "The Manager will arrange for the planting of various winter crops on property it will lease for [Giles/CBS]. The planting costs will be funded from (i) equity capital contributed by [Giles/CBS] and (ii) crop financing for which [Giles/CBS] will assume recourse liability * * *."

Pursuant to this authority, SunCal acted for the corporations as it did for the 3 Wells limited partnerships, and Giles and CBS are subject to Oregon jurisdiction on the alleged guarantees for the same reason that these limited partnerships are.

The trial court erred in concluding that it lacked jurisdiction over the additional limited partnerships and the corporations.

██ ██ Although Tex-Ark does not dispute the court's jurisdiction, its general partner N-G-M Ltd. does. SunCal was concededly Tex-Ark's managing agent in Oregon. An agent of a partnership may, by its actions, subject the general partners to the jurisdiction of the states where the agent acts. *See, e.g., Felicia, Ltd. v. Gulf American Barge, Ltd.,* 555 F Supp 801, 805-06 (ND Ill 1983). The trial court erred in holding that it had no jurisdiction over N-G-M.[4]

We turn now to a consideration of jurisdiction over the investors. The trial court held that it was without jurisdiction over all of the investors in the limited partnerships, including those involved in the partnerships over which it found jurisdiction. Bank does not allege that any of the investors acted in person in Oregon. Rather, it argues that Oregon courts may, within the limits of the Due Process Clause, exercise personal jurisdiction over the investors, first, because SunCal, in arranging financing in Oregon on behalf of partnerships to which they were at risk for amounts in addition to their investments, acted as their agent and, second, because the investors knowingly participated in an investment scheme through which they received direct financial benefits.

 All the investors accepted liability in addition to their investments in the hope of obtaining tax advantages. However, that additional liability was carefully limited. Although the language varies, the Mopak agreement provision is typical:

> "The General Partner anticipates that substantial loans will be arranged on behalf of the Partnership in connection with the Partnership's 1979-80 crop program. The Limited Partners will have personal liability for repayment of such loans in the amount of up to $2,200 per Unit. [Each Unit cost $1,000] All proceeds received by the Partnership from the sale of crops shall be applied first to the repayment of such loans. *If, however, in the judgment of the General Partner, the*

---

[4] One of N-G-M's general partners, SMN Securities Corporation, is also a defendant but not a respondent. The other, A. L. Graber & Associates, Inc., is not a party. Bank in its brief treats both SMN and Graber as respondents in this appeal. The judgment of dismissal does not mention SMN. We thus have no occasion to determine whether the court would have jurisdiction over either or both.

*proceeds from the sale of the crops will not be sufficient to repay the crop loans* in full prior to August 1, 1980, then *the General Partner may make a call on the Limited Partners* on or before August 1, 1980, *to contribute additional capital to the Partnership of up to $2,200 per Unit for the sole purpose of repaying the crop loans.* Any amount of such call proceeds not needed for the repayment of crop loans shall be returned forthwith to the contributing Limited Partners. The liability of the Limited Partners for debts and obligations of the Partnership shall be limited to their capital contributions plus their share of undistributed profits except as otherwise provided in this paragraph." (Emphasis supplied.)

These provisions create a liability *to the partnership* which would come into effect *only if the general partner made a call.* The power to make a call was limited in time, and it apparently expired as to all of the partnerships before Bank filed these actions. There is no basis in the partnership agreement for finding that SunCal was the agent of the limited partners individually, and there is no basis in the record for finding that it, or anyone on its behalf, purported to act as their agent. Bank does not claim that the guarantees are guarantees of the limited partners individually rather than of the limited partnerships as separate entities.

ORS 69.380 provides:

"A partner, unless he is a general partner, is not a proper party to proceedings by or against a partnership, except where the object is to enforce a right or liability of a limited partner against or to the partnership."

These actions are not to enforce liabilities *to the partnerships;* they are attempts to enforce liabilities *from the partnerships* to a third party. Limited partners are not proper parties to such actions. The limited partners are passive investors, citizens of Texas and California, where the partnerships were created and whose applicable law is similar to Oregon's in this respect. Cal. Corp. Code § 15526 (repealed January 1, 1983); Vernon's Ann Tex. Civ. Stat., Art 6132a, § 27. Jurisdiction over the partnerships is based on their agent's acts in Oregon. The investors did not act in Oregon and had no agents in this state. There is no basis for subjecting them to jurisdiction in Oregon for their potential liability to these foreign limited partnerships.

Case A26198 reversed as to N-G-M Ltd., and other-

wise affirmed; case A26199 affirmed; case A26200 reversed as to Wayne Farms, Ltd., and otherwise affirmed; case A26201 reversed as to Vista Properties, and otherwise affirmed; case A26202 reversed; case A26203 affirmed; case A26204 reversed as to Sunriver Ag Fund IB, and otherwise affirmed; case A26205 reversed as to SunRiver Ag Fund IA, and otherwise affirmed; case A26206 reversed as to Sunriver Ag Leasing, and otherwise affirmed; case A26207 reversed; all cases remanded for further proceedings.