Argued and submitted April 7, affirmed December 8, 1993

BOEHM & COMPANY,
an Oregon corporation,
*Respondent,*

*v.*

ENVIRONMENTAL CONCEPTS, INC.,
a Delaware corporation,
and AMI Medical Electronics, Inc.,
a Delaware corporation,
*Appellants.*

(9012-07655; CA A72880)

865 P2d 413

Margaret H. Leek Leiberan argued the cause for appellants. With her on the briefs were Leiberan & Gazeley, Craig Curtright and Wallace & Klor, P.C.

Roger Leo argued the cause for respondent. With him on the brief was Leo & Horton.

Before Warren, Presiding Judge, and Edmonds and Landau, Judges.

LANDAU, J.

**LANDAU, J.**

Plaintiff sued defendant Environmental Concepts, Inc. (ECI-Del) on a promissory note and defendant AMI Medical Electronics, Inc. (AMI) as guarantor of that note. After trial without a jury, the trial court entered judgment in favor of plaintiff. We affirm.

Plaintiff is an Oregon corporation, which owned shares in a Florida corporation, Environmental Concepts, Inc. (ECI-Fl). In 1988, AMI, a Delaware corporation, became interested in purchasing the assets of ECI-Fl. To accomplish that transaction, AMI formed a subsidiary Delaware corporation, ECI-Del. AMI's president, Earl Anderson, instructed ECI-Del's president, Joe Lindell, to contact each of ECI-Fl's shareholders to obtain their consent to the transaction as well as their guarantee that ECI-Fl would perform its obligations to the buyer, in exchange for payment for their shares of ECI-Fl, guaranteed by AMI. Lindell contacted plaintiff's president, who signed and returned the requested form of acquiescence. Plaintiff then surrendered its shares of ECI-Fl. ECI-Fl and ECI-Del then entered into an agreement titled "Agreement to Purchase Notes" formalizing the sale.[1] Under the terms of the agreement, ECI-Del executed a promissory note to ECI-Fl, payable in three annual installments. AMI guaranteed payment on the note. The agreement also provided that neither ECI-Fl nor its shareholders would compete with ECI-Del for a period of five years. The agreement and note were executed in Florida.

Several months later, the promissory note was replaced by separate promissory notes payable to ECI-Fl's individual shareholders. AMI again guaranteed the notes. Anderson signed them in New York and mailed them to Lindell in Florida who, in turn, forwarded them to the shareholders, including plaintiff, who was in Oregon. When neither ECI-Del nor AMI paid on the note, plaintiff brought this action.

AMI appeared specially, moving to dismiss for lack of personal jurisdiction. The trial court denied the motion but

---

[1] The agreement was given that title because ECI-Fl had previously been sold to another company, which had issued promissory notes for its assets. To purchase ECI-Fl, therefore, ECI-Del had to purchase those promissory notes.

granted leave for AMI to reargue it at trial. Both defendants then answered, asserting as an affirmative defense that any liability under the promissory note should be offset against damages for plaintiff's failure to abide by the noncompetition provision in the original purchase agreement, which they argued had been incorporated into the promissory note. Following trial, the court ruled that it had personal jurisdiction over both defendants, that defendants were not entitled to an offset because the noncompetition provision was not part of the note on which plaintiff brought its suit and because, in any event, the provision was unenforceable. The trial court entered judgment in plaintiff's favor for the full amount of the promissory note plus interest and costs.

AMI assigns error to the trial court's ruling that it had personal jurisdiction over AMI. It argues that its only connection with Oregon as a guarantor on the promissory note is insufficient to establish the requisite "minimum contacts" with this state. Plaintiff argues that the totality of AMI's conduct is sufficient to justify the court's exercise of jurisdiction under ORCP 4E(3).

■    We review the issue of personal jurisdiction as a matter of law. *Horn and Horn*, 97 Or App 177, 180, 775 P2d 338, *rev den* 308 Or 465 (1989). ORCP 4B through 4K enumerate specific bases for the exercise of personal jurisdiction over out-of-state defendants, while ORCP 4L, the "catchall provision," extends personal jurisdiction to the limits of due process under the Fourteenth Amendment to the federal constitution. *Regal Manufacturing Co. v. Louisiana Glass, Inc.*, 83 Or App 463, 466, 731 P2d 1066, *rev den* 303 Or 454 (1987). To the extent that the specific provisions are patterned after prior decisions defining the constitutional limits of personal jurisdiction, it is sufficient that plaintiff has alleged facts bringing its case within one of those provisions; in those cases, it is not necessary to examine the case under ORCP 4L as well. *See State ex rel Hydraulic Servocontrols v. Dale*, 294 Or 381, 384-85, 657 P2d 211 (1982).

■    ORCP 4E(3) provides that an Oregon court may exercise jurisdiction over a party in any action or proceeding that

"arises out of a promise, made anywhere to the plaintiff or to some third party for the plaintiff's benefit, by the defendant

to deliver or receive within this state or to send from this state goods, documents of title or other things of value[.]''

We have held that, although that rule is not based on any prior constitutional decisions, it was intended to extend personal jurisdiction to the constitutional limits. *White Stag Mfg. Co. v. Wind Surfing, Inc.*, 67 Or App 459, 463-64, 679 P2d 312 (1984). Therefore, in applying ORCP 4E(3), we first inquire whether it applies to the transaction between the parties. If it does, we next inquire whether that transaction presents sufficient contacts with Oregon that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice. *Burger King Corp. v. Rudzewicz*, 471 US 462, 472-78, 105 S Ct 2174, 85 L Ed 2d 528 (1985); *State ex rel Circus Circus Reno, Inc. v. Pope*, 317 Or 151, 159, 854 P2d 461 (1993).

AMI argues that ORCP 4E(3) does not apply here, because it made no promise to deliver within Oregon anything of value. According to AMI, it merely promised to act as guarantor, nothing more. We disagree. AMI's promise to act as guarantor cannot be viewed in a vacuum. It included a commitment to make payments to ''Boehm & Co., 8820 North Lombard, Portland, OR 97203.'' We conclude, therefore, that the payment and the guaranty were to be performed in Oregon.

■       We turn, then, to the question whether the exercise of jurisdiction on the basis of AMI's conduct comports with constitutional standards. In *State ex rel Sweere v. Crookham*, 289 Or 3, 609 P2d 361 (1980), the Supreme Court held that the execution of a guaranty to an Oregon corporation, by itself, is insufficient to establish personal jurisdiction. To satisfy constitutional standards, the court held, there must be evidence that the guaranty played an ''integral part in causing or promoting significant economic consequences in Oregon.'' 289 Or at 10. As an example of the sort of economic consequences it considered to be constitutionally significant, the court referred to *State ex rel Ware v. Hieber*, 267 Or 124, 133, 515 P2d 721 (1973), in which the execution of a personal guaranty caused an Oregon company to continue a franchise agreement that otherwise would have been terminated. The most important fact in *Ware*, the court said, was that the plaintiff in that case had relied on the guaranty in conducting

its business in Oregon. *State ex rel Sweere v. Crookham, supra,* 289 Or at 9.

Since *Sweere,* we have held that "[r]eliance on a guaranty is a critical factor" in determining the reasonableness of asserting personal jurisdiction over a nonresident guarantor. *White Stag Mfg. Co. v. Wind Surfing, Inc., supra,* 67 Or App at 465; *see also Nike, Inc. v. Spencer,* 75 Or App 362, 373, 707 P2d 589, *rev den* 300 Or 451 (1985); *Resorts Marketing v. Zuckerman,* 52 Or App 589, 594, 628 P2d 770 (1981).

We conclude that AMI's guaranty was an "integral part" in causing important economic consequences in Oregon. AMI initiated the negotiations with plaintiff, through its subsidiary ECI-Del. ECI-Del's president contacted plaintiff in Oregon and explained the terms of the transaction, which included AMI's guaranty. Plaintiff agreed to relinquish its shares of ECI-Fl in return for the promissory notes that AMI guaranteed. In the process, plaintiff changed from a mere ECI-Fl stockholder to a holder of a promissory note from an entirely different corporation. Plaintiff also became a guarantor of ECI-Fl's compliance with certain terms of the sale agreement. AMI's eventual failure to make payments to plaintiff impaired plaintiff's ability to move capital that otherwise would have been available in Oregon. As in *Sweere,* therefore, plaintiff relied on AMI's guaranty in ways that caused substantial economic consequences in this state, and the trial court correctly found it reasonable to exercise personal jurisdiction over that defendant.

Both defendants assign error to the trial court's ruling that the promissory note contained no provision prohibiting plaintiff from competing with ECI-Del. They rely on the provision of the note that provides that payments will be made

> "with interest at a rate of six percent (6%) per annum until paid, in accordance with provisions of Paragraph 9(a) of the Agreement titled 'Agreement to Purchase Notes.' * * * *Such Agreement* is incorporated herein by reference." (Emphasis supplied.)

Defendants argue that Paragraph 10 of the "Agreement to Purchase Notes" contained a noncompetition provision, and

that the entire agreement—including Paragraph 10—was incorporated into the promissory note by reference. Plaintiff argues that only the portion of the "Agreement to Purchase Notes" that is specifically referenced in the promissory note —Paragraph 9(a)—was incorporated into the note by reference, not the entire agreement.

■   We review this question of contract construction first to determine whether, as a matter of law, the disputed provision is ambiguous. A provision is ambiguous

"if it has no definite significance or it is capable of more than one sensible and reasonable interpretation; it is unambiguous if its meaning is so clear as to preclude doubt by a reasonable person." *Deerfield Commodities, Ltd. v. Nerco, Inc.*, 72 Or App 305, 317, 696 P2d 1096, *rev den* 299 Or 314 (1985).

If the provision is ambiguous, then what the parties intended by agreeing to it becomes a question of fact, which we review for support by any competent evidence. *Thompson v. Bolliger, Hampton & Tarlow*, 118 Or App 700, 709, 849 P2d 526, *rev den* 317 Or 163 (1993).

■   We cannot say that either party's reading of the promissory note is "so clear as to preclude doubt by a reasonable person." *Deerfield Commodities, Ltd. v. Nerco, Inc., supra*, 72 Or App at 317. Plaintiff correctly points out that the subject of the disputed provision concerns only the terms of payment, not noncompetition agreements, and that the reference to "[s]uch Agreement" must be construed in the light of the specific reference to Paragraph 9(a) of that agreement in the preceding sentence. On the other hand, defendants correctly note that the incorporating sentence refers to "[s]uch Agreement" in its entirety, not to a particular paragraph of that agreement. Both interpretations are reasonable.

■   Because we conclude that the provision is ambiguous, we review for any competent evidence to support the trial court's conclusion that the parties did not intend the provision to incorporate the noncompetition provision of the "Agreement to Purchase Notes." The trial court found that plaintiff's president never saw the "Agreement to Purchase Notes," much less a provision within it containing an agreement not to compete, that he never discussed an agreement

not to compete and never signed an agreement not to compete. In short, the trial court found, the parties never intended that the noncompetition provision of the "Agreement to Purchase Notes" be incorporated into the promissory note. There is evidence in the record to support each of those findings. Therefore, the trial court did not err.

Because of our disposition of the preceding assignment of error, we need not address defendants' other assignments.

Affirmed.