1

Argued and submitted October 26, reversed and remanded with instructions on appeal; affirmed on cross-appeal December 21, 1994, respondent's motion for reconsideration filed January 25 allowed by opinion March 8, 1995
See 133 Or App 261 (1995)

VALUE MOBILE HOMES, INC.,
*Respondent - Cross-Appellant,*

*v.*

BANK OF AMERICA OREGON,
formerly known as Seafirst Bank Oregon,
formerly known as Woodburn State Bank,
*Appellant - Cross-Respondent.*

BANK OF AMERICA OREGON,
formerly known as Seafirst Bank Oregon,
formerly known as Woodburn State Bank,
*Third-Party Plaintiff,*

*v.*

Dean W. POLLMAN,
*Third-Party Defendant.*

(91C-11673; CA A80787)

887 P2d 387

John F. McGrory argued the cause for appellant - cross-respondent. On the briefs were Timothy R. Volpert and Davis Wright Tremaine.

Kim E. Hoyt argued the cause for respondent - cross-appellant. With her on the briefs was Ferder, Ogdahl, Brandt & Casebeer.

Before Warren, Presiding Judge, and Edmonds and Landau, Judges.

WARREN, P. J.

## WARREN, P. J.

Defendant (bank) appeals from a judgment awarding plaintiff Value Mobile Homes, Inc. (VMH) damages for breach of contract. VMH cross-appeals the trial court's denial of its request for attorney fees. We reverse on the appeal and affirm on the cross-appeal.

Bank owned unimproved real property in the City of Woodburn (the city). Sometime in 1988, bank's president (Cutsforth) talked with VMH's president (Pollman) about leasing that property to VMH for use as a mobile home sales lot. Bank requested that VMH obtain a bid for improvement of the property, and referred it to a contractor. The contractor estimated that the improvements necessary for VMH to operate the sales lot would cost $26,000. In 1989, the parties entered into a written lease. At about the same time, Cutsforth wrote a letter to Pollman confirming an agreement by bank to provide VMH with a line of credit (the flooring agreement letter). Sometime after the parties signed the lease, they learned that the improvements VMH anticipated making to the property would not satisfy the city's requirements, and that fulfilling those requirements would cost far more than $26,000. VMH unsuccessfully negotiated with bank to have it pay for the unanticipated improvements and decided not to open a business on the property.

Later, VMH brought this action alleging, in part, a claim for breach of contract, based on a "partially written and partially oral" agreement. It alleged that bank promised, in exchange for VMH's expenditure of $26,000, to provide it with a fully improved property, suitable for use as a mobile home sales lot. VMH sought damages for its out-of-pocket expenses and for lost profits.

At trial, bank moved for a directed verdict. It contended that the contract consisted only of the lease and flooring agreement, and unambiguously required VMH to make all improvements to the property. The trial court agreed that the lease and flooring agreement letter formed a fully integrated, *written* contract.[1] However, it held that the

---

[1] Although there was evidence at trial about oral representations made to plaintiff by Cutsforth, plaintiff does not cross-appeal the trial court's decision that the contract between the parties was not "partially oral."

contract was ambiguous, and denied bank's motion. The trial court then submitted the case to the jury, which found that bank had breached that contract. Later, the court entered a money judgment for VMH.

Bank raises several assignments of error. Because it is dispositive, we address only bank's assignment that the court erred in denying its motion for directed verdict. Bank argues that the trial court erred as a matter of law in concluding that the contract was ambiguous. It contends that, if the contract unabmiguously required VMH to make all necessary improvements to the property, the court erred in failing to grant its motion. VMH argues that the parties' agreement is ambiguous about whether, after VMH had spent $26,000 on improvements, bank was required to pay for any further improvments required to make the property ready for its intended use.

Whether the contract is ambiguous is a question of law. *Boehm & Co. v. Environmental Concepts, Inc.*, 125 Or App 249, 255, 865 P2d 413 (1993). A provision is ambiguous

"if it has no definite significance or it is capable of more than one sensible and reasonable interpretation; it is unambiguous if its meaning is so clear as to preclude doubt by a reasonable person." *Deerfield Commodities v. Nerco, Inc.*, 72 Or App 305, 317, 696 P2d 1096, *rev den* 299 Or 314 (1985).

The parties agree with the trial court's conclusion that the contract consists only of the lease and flooring agreement letter. The lease provides, in pertinent part:

"2(d) Lessee [VMH] shall comply at lessee's own expense with all laws and regulations of any municipal, county, state, federal or other public authority respecting the use of said leased premises.

"* * * * *

"4(a) The lessor [bank] shall not be required to make any repairs, alterations, additions or improvements to or upon said premises during the term of this lease * * *.

"* * * * *

"19. Lessee will improve the property by an estimated $26,000.00 for permits, sewer & water, drainage, gravel, paving, grading and other necessary items to operate a mobile home sales lot."

The pertinent portion of the flooring agreement letter provides:

> "This letter is to verify our agreement in leasing to you the vacant 1.6 acre parcel of land * * * owned by the bank.
>
> "* * * * *
>
> "You will be expected to place an estimated $26,000 in improvements to the property in the way of permits, fees, sewer & water, drainage, gravel, paving, grading and other necessary items to operate a mobile home sales lot. * * * The bank will assist you in an open loan of $26,000 * * *.
>
> "In addition, the bank will provide you with a flooring/operating line in the amount of $80,000 * * *."

The issue is whether those provisions can reasonably be interpreted as imposing *on bank* a contractual obligation to spend money on improvements if VMH's expenditure of $26,000 was insufficient. We conclude that they cannot.

■ Paragraphs 2(d) and 4(a) of the lease unambiguously provide that VMH agreed to comply at its own expense with applicable city regulations, and to pay for improvements to the property. Paragraph 19 of the lease and the third paragraph of the flooring agreement letter confirm that VMH had the responsibility for making the improvements "necessary * * * to operate a mobile home sales lot." The plain language of those provisions also shows that the parties *estimated* the cost of those improvements. That the parties erroneously believed the improvements would cost $26,000 does not lead to the conclusion that bank agreed to pay for *anything* after VMH had spent that sum.

■ A contract with unambiguous terms is generally interpreted according to the plain meaning of those terms. *Rodway v. Arrow Light Truck Parts*, 96 Or App 232, 236, 772 P2d 1349 (1989). Here, the lease and flooring agreement letter constitute a fully integrated, written contract. There is no language in that contract that can reasonably be interpreted as imposing on bank any responsibility for providing VMH with property improved and ready for use as a mobile home sales lot. We conclude that the unambiguous language of the contract provides that VMH was responsible for making the improvements necessary to operate a mobile home sales lot on bank's property.

■ VMH's claim for breach of contract alleges, in pertinent part, that bank failed to provide it "real property for use as a mobile home sales lot in the condition necessary to accomplish the intent of the contract." VMH argues that the parties *intended* that it would not have to spend more than $26,000 to prepare the property for use as a mobile home sales lot, and that the trial court properly considered the circumstances under which the contract was made in concluding that it was ambiguous. Although VMH is correct that the trial court could consider evidence about the circumstances under which the contract was executed, that evidence may not vary the terms of the written agreement. ORS 42.220; *Deerfield Commodities v. Nerco, Inc., supra*, 72 Or App at 317.

Because we have concluded that the unambiguous language of the contract required VMH to make the necessary improvements, VMH's breach of contract claim fails as a matter of law. *See, e.g., Edwards v. Times Mirror Co.*, 102 Or App 440, 445, 795 P2d 564 (1990). It was error for the trial court to deny bank's motion for directed verdict.

On cross-appeal, VMH assigns error to the trial court's refusal to award it prevailing party attorney fees, as provided by the parties' contract. Because of our disposition of the appeal, we affirm on the cross-appeal.

On appeal, reversed and remanded with instructions to allow defendant's motion for directed verdict and to enter an appropriate judgment; affirmed on cross-appeal.