Argued and submitted March 4, affirmed in part, reversed in part September 25, reconsideration denied November 22, petition for review denied December 17, 1985

(300 Or 451)

## NIKE, INC., formerly
## BRS, Inc., dba Blue Ribbon Sports,
*Respondent,*

*v.*

## SPENCER et al,
*Appellants.*

## (A8306-03549; CA A32879)

707 P2d 589

Lloyd W. Weisensee, Portland, argued the cause for appellants. With him on the briefs was Williams, Fredrickson, Stark, Hiefield, Norville & Weisensee, P.C., Portland.

E. Andrew Jordan, Portland, argued the cause for respondent. With him on the brief was Bolliger, Hampton & Tarlow, Portland.

Before Richardson, Presiding Judge, and Warden and Newman, Judges.

WARDEN, J.

## WARDEN, J.

Nike, Inc., as the surviving corporation of a merger with its wholly owned subsidiary, BRS, Inc., brought this action to enforce a guaranty agreement between defendants and BRS for the debts of Barefoot Sports, Inc., a Wisconsin corporation. After denying defendants' motions to dismiss for lack of personal jurisdiction, ORCP 21A(2), and for failure to state facts sufficient to constitute a claim, ORCP 21A(8), the trial court granted Nike's motion for summary judgment and entered a judgment in the amount of $152,326.76, representing the unpaid principal balance of Barefoot Sports' account with Nike, together with interest through May 15, 1983, in the sum of $28,775.91, plus interest on the unpaid principal balance at the rate of 18 percent per annum from May 15, 1983, and for attorney fees and costs. Defendants appeal, assigning error to the court's denial of their motions for dismissal and the granting of Nike's motion for summary judgment. We affirm in part, reverse in part and remand.

Nike is an Oregon corporation engaged in the athletic and leisure shoe and apparel business. Its subsidiary, BRS, also was an Oregon corporation and conducted a number of Nike's manufacturing and marketing activities. In 1975, Barefoot Sports established an open credit account with BRS. The application form bears a Nike logo and the legend "BRS, Inc., 6175 S. W. 112th Avenue, Beaverton, Oregon." In December, 1978, BRS requested personal guaranties from the corporate officers of Barefoot Sports, including defendants. In relevant part, the letter, addressed to the attention of defendant David Spencer and requesting the guaranties, read:

"We are booking a July Future II order for $100,000.oo. The payment on this particular order will be broken into 4 equal parts with the first payment starting August 10th and finishing on November 10th.

"We agreed to this arrangement based on the fact there will be a zero balance come June 15, 1979 since your credit line is $100,000.oo.

"We are also requesting personal guaranties signed by you and your wife along with the officers-Wilmer Trodahl and Dan Stroick. In conjunction with this request, we need to review personal financial statements.

"We have carefully reviewed the financial statements

made available to us including the latest one dated August 31, 1978. Although profits are being made and retain *[sic]* to the corporation, the corporate equity is such that we do not feel capable of providing the $100,000.oo credit line without additional security."

A second letter, dated July 5, 1979, stated:

"To confirm our conversation of June the 17th, we are in agreement with your paying the balance of the July Futures over four equal parts with the first payment starting August 10th and finishing on November the 10th. This agreement was made with our Mr. Mike Walsh, with the understanding that you, your wife, Wilmer Trodahl and Dan Stroick would sign Continuing Personal Guarantees and provide personal financial statements. The Personal Guarantees must be of a continuing nature as to justify a $100,000.00 credit line for future orders placed by your company. Therefore, we are enclosing new Personal Guarantees to be signed and returned along with your personal financial statements."

On July 7, 1979, defendants executed a one-page, unconditional guaranty,[1] which in pertinent part provides:

"IN CONSIDERATION of the extension of Credit by BRS, INC. to
BAREFOOT SPORTS, INC., hereinafter called
    (name of business)
debtor, the undersigned do hereby personally guarantee payment, when due, of any indebtedness now or at any time hereafter owing by debtor to BRS, INC. If there be more than one guarantor, whether or not their guarantees shall be evidenced by a single writing, their obligation shall be joint and several.

"Each of the undersigned waives notice of extension of credit to debtor, notice of default and notice of every other kind. Each of the undersigned consents to extensions of maturity, the taking or release of security and all other acts which, without the consent of a party secondarily liable, might impair recourse against such party."

Defendant David Spencer, president of Barefoot Sports, returned the signed guaranty agreement to "Nike—BRS" at its Beaverton address.

On December 31, 1981, BRS merged into Nike. *See*

---

[1] The guaranty was not signed by Trodahl.

ORS 57.455 to 57.495. Although it is not entirely clear from the evidence, it appears that before the merger both BRS and Nike were selling goods to Barefoot Sports and that Nike continued to do so after the merger.

■    Defendants' first assignment of error raises the issue of personal jurisdiction over each of the individual defendants. Our analysis begins with ORCP 4. Specific bases for exercising "long-arm" jurisdiction are enumerated in subsections B through K; subsection L is a catchall provision "extending personal jurisdiction to the outer limits of due process under the Fourteenth Amendment of the United States Constitution." *State ex rel Hydraulic Servocontrols v. Dale,* 294 Or 381, 384, 657 P2d 211 (1982). Our approach generally is first to determine whether any of the specific provisions applies. If none is applicable, we then examine due process considerations under subsection L, which provides:

> "Notwithstanding a failure to satisfy the requirement of sections B. through K. of [ORCP 4], in any action where prosecution of the action against a defendant in this state is not inconsistent with the Constitution of this state or the Constitution of the United States."

■    The burden is on Nike to allege and prove facts sufficient to establish jurisdiction. *State ex rel Jones v. Crookham,* 296 Or 735, 738, 681 P2d 103 (1984); *State ex rel Sweere v. Crookham,* 289 Or 3, 7, 609 P2d 361 (1980). Nike first contends that in this case jurisdiction exists under ORCP 4E(4):

> "A court of this state having jurisdiction of the subject matter has jurisdiction over a party served in an action pursuant to Rule 7 under any of the following circumstances:
>
> "* * * * *
>
> "In any action or proceeding which:
>
> "* * * * *
>
> "Relates to goods, documents of title, or other things of value sent from this state by the plaintiff to the defendant on the defendant's order or direction or sent to a third person when payment of such goods, documents, or things was guaranteed by defendant * * *."

Nike's position is that ORCP 4E(4) applies, "because goods were shipped, at defendants' order, from the State of

Oregon to the defendants, and payment was guaranteed by defendants." Alternatively, it argues that personal jurisdiction is proper under ORCP 4L, because the acts of defendants caused important consequences in Oregon, the cause of action arose from consequences of defendants' activities and the connection is so substantial as to make jurisdiction over defendants reasonable. *See State ex rel White Lumber v. Sulmonetti*, 252 Or 121, 448 P2d 571 (1968). Defendants counter that ORCP 4E(4) cannot be the basis for jurisdiction, arguing that Nike does not distinguish between defendants and Barefoot Sports and that, given that distinction, there is no evidence in the record that goods were shipped at defendants' request or to defendants and that plaintiff's reliance on ORCP 4E(4) requires the unwarranted assumption that the guaranties apply to pre-merger sales by Nike to Barefoot Sports or that the guaranties survived the merger so as to apply to Nike's post-merger sales to Barefoot Sports. More generally, defendants argue that their contacts with Oregon are too minimal to be constitutionally sufficient bases for personal jurisdiction under ORCP 4L.

At this juncture, we note that the potential applicability of defendants' guaranties of payment for sales by Nike to Barefoot Sports, as distinguished from sales by BRS, is a pivotal issue underlying defendants' second and third assignments or error. Because we agree that that issue is related to the question of jurisdiction, we address it first. That defendants executed personal guaranties to BRS for payment of debts of Barefoot Sports and that a merger of BRS and Nike was effected December 31, 1981, leaving Nike as the surviving corporation, are not disputed. The precise question of law we must decide is whether, following a merger of a corporation and its subsidiary corporation, a guaranty in favor of the subsidiary inures to the benefit of the surviving corporation.

The effect of a corporate merger is statutorily controlled. In relevant part, ORS 57.480(1) provides:

"(1)  When a merger or consolidation becomes effective, the effect on the corporations parties to the merger or consolidation is as follows:

"(a)  The several corporations parties to the plan of merger or consolidation shall be a single corporation,

which, in the case of a merger, shall be that corporation designated in the plan of merger as the surviving corporation, and, in the case of a consolidation, shall be the new corporation provided for in the plan of consolidation.

"(b) The separate existence of all corporations parties to the plan of merger or consolidation, except the surviving or new corporation, shall cease.

"* * * * *

"(d) Such surviving or new corporation shall thereupon and thereafter possess all the rights, privileges, immunities and franchises, as well of a public as of a private nature, of each of the merging or consolidating corporations; and all property, real, personal and mixed, and all debts due on whatever account, including subscriptions to shares, and all other choses in action, and all and every other interest, of or belonging to or due to each of the corporations so merged or consolidated, shall be taken and deemed to be transferred to and vested in such single corporation without further act or deed; and the title to any real estate, or any interest therein, vested in any of such corporations shall not revert or be in any way impaired by reason of such merger or consolidation.

"(e) Such surviving or new corporation shall thenceforth be responsible and liable for all the liabilities and obligations of each of the corporations so merged or consolidated; and any claim existing or action or proceeding pending by or against any of such corporations may be prosecuted as if such merger or consolidation had not taken place, or such surviving or new corporation may be substituted in its place. Neither the rights of creditors nor any liens upon the property of any such corporation shall be impaired by such merger or consolidation."

Defendants first argue that, under common law principles, Nike would not be able to claim the benefits of their guaranty to BRS and that ORS 57.480 should not be interpreted to impose a term on which the parties did not agree. They argue that the guaranty agreement was a special guaranty running to BRS and that there are no words such as "successors," "assigns" or "transferees" to indicate that transferability was intended. Citing *Marshall-Wells Co. v. Tenney*, 118 Or 373, 383, 244 P 84 (1926), defendants argue that a contract of guaranty must be strictly construed and cannot be extended by construction or implication beyond its precise terms.

In *Marshall-Wells,* Beall, a corporate director of Multnomah Iron Works, had signed a continuing guaranty for the debts of that corporation; he later resigned his position and some months thereafter the remaining directors signed an agreement permitting the principal creditors to control operation of the business. Noting the general rule that a material change in the contract between the guarantee and the principal may serve to discharge a guarantor of obligations under the guaranty agreement, the Supreme Court held that Beall was discharged from liability because of the change in the business structure, to which he had not consented and over which he had no control. 118 Or at 385, 393-94. Defendants take the position that, although this case involves a statutorily controlled change in the creditor rather than an unconsented-to change in the debtor, the same rule should apply.

■ ■     We reject defendants' common law, strict construction argument. The rationale underlying the decision in *Marshall-Wells* is that a guarantor should be released from liability if a change in the contract between the guarantee and the principal, made without the guarantor's consent, materially increases his risk as a guarantor. *See Lloyd Corporation v. O'Connor,* 258 Or 33, 37-38, 479 P2d 744 (1971); *see also Restatement of Security* § 128 (1941). Concomitantly, however, if the change does not increase the risk of the guarantor, the guarantor is not released from liability. *Lloyd Corporation v. O'Connor, supra,* 253 Or at 38-39; *Fassett v. Deschutes Enterprises,* 69 Or App 426, 686 P2d 1034, *rev den* 298 Or 150 (1984). We see no reason to apply different principles when a creditor-guarantee is involved in a merger pursuant to statute. *Accord, Harris Trust and Sav. Bank v. Stephans,* 97 Ill App 3rd 683, 422 NE2d 1136 (1981); *see also Essex International, Inc. v. Clamage,* 440 F2d 547 (7th Cir 1971) (under Illinois law, even consolidation of two corporations by sale of assets, rather than merger, does not discharge guarantor in absence of increased risk). Defendants here do not contend that the merger of BRS into Nike in any way increased their risk, and there is no evidence to suggest that for that reason they should be discharged from their obligations under the guaranty agreement. Accordingly, we turn to the narrow question of the construction to be given ORS 57.480 as to whether a guaranty in favor of a corporation that is merged into another may be enforced by the surviving corporation.

The question is one of first impression in Oregon, but both parties direct us to authority from other jurisdictions. Defendants rely primarily on *Mechanics' American Nat. Bank v. Rowell,* 182 SW 989 (Mo 1916) and *Kelly-Springfield Tire Co. v. Hamilton,* 230 Mo App 430, 91 SW2d 193 (1936). In the first case, a Mrs. Crane executed a guaranty for the debts of the J. H. Crane Furniture Company to the Mechanics' National Bank (MNB), its successors and assigns. Subsequently, as part of an exchange of assets for stock, MNB delivered Mrs. Crane's guaranty to a newly formed corporation, the Mechanics' American National Bank (MANB). MNB, however, did not surrender its charter and was not disincorporated. The court observed that, although the guaranty would have obligated Mrs. Crane to MANB for amounts due to MNB at the time of the transfer, the debt at issue was for credit extended by MANB after the transfer. The court held that, under the unambiguous language of the contract of guaranty, Mrs. Crane's liability could not be extended to cover new loans made by a bank other than the one to which she gave the guaranty.

Similarly, in *Kelly-Springfield Tire Co. v. Hamilton, supra,* a Mr. Steiguer, in March, 1932, executed a written guaranty to the Springfield Tire Company of New Jersey (Springfield), a New Jersey corporation doing business in Missouri, for debts of the Hamilton Tire Company. The guaranty contained language that it would inure to the benefit of Springfield, its successors and assigns. In July, 1932, Springfield retired from business in Missouri, and the Kelly-Springfield Tire Company (Kelly-Springfield), a New York corporation, took over the business as Springfield's successor.

Kelly-Springfield later brought an action against Steiguer on the guaranty. The court noted that the debt sued on represented only credit extended to Hamilton by Kelly-Springfield after July, 1932. It held that the guaranty was a special guaranty given to Springfield, that an assignment could only assign obligations made before the assignment was made, that the New Jersey corporation to which the guaranty was given (Springfield) was a separate and distinct entity from the plaintiff and, therefore, that Steiguer had no liability for payment of the debt. We find defendants' reliance on the foregoing cases misplaced. Both cases are inapposite, because in each the guaranteed corporation continued as a separate

entity, and neither case involved a merger of two corporations pursuant to statute.

We find more relevant *McElwain Co. v. Primavera,* 180 App Div 288, 167 NYS 815 (1917), to which both parties assign import—Nike points to language by the majority; defendants rely on the rationale of the dissent. That case involved a New York statute governing the merger of corporations, which provided that upon merger the surviving corporation "shall acquire and become possessed of the estate, property, rights, privileges and franchises of such [merged] corporations, and they shall vest in and be held and enjoyed by it * * * without change or diminution." The defendant gave a continuing guaranty for purchases by one Henry to Morse and Rogers, a corporation, in 1910. In 1913, that corporation merged with the plaintiff, also a corporation. The plaintiff continued to sell goods to Henry until 1915, when Henry failed to pay, and the plaintiff sought recovery for the debt against the guarantor. The majority stated that "the company formed by the merger stands in the place of those merged, and any right which belonged to them may be asserted by it * * *." The majority concluded that the defendant was deemed to have given his guaranty charged with the knowledge that the law permitted the merger of that corporation with another, with all attendant rights of the component parts vesting in the surviving corporation. It noted that assignment of the guaranty was not at issue, and that rules of assignment of contracts were inapplicable, because the vesting of such rights occurred by operation of law. The court held that the guaranty inured to the benefit of the plaintiff. 180 App Div at 294. The dissent, however, stated:

> "Certainly the language of the statute quoted above is as strong as could have been devised to effect a devolution or transfer to the resultant corporation of all property and rights of every description capable of transference from one corporation or person to another. But there are certain things which even the Legislature may not do by any language however strong. It may not make a contract for an individual, and may not extend the operation of a contract beyond the fair intendment of the individual who made it and who is to be bound by it. Hence it cannot by statute work the assignment or transference of a contract which is in its nature unassignable. The contract of guaranty has generally been considered to be such a contract. It has always been held to be strictissimi juris.

"The guarantor is entitled to determine for himself the terms of his guaranty as to extent, terms, and the person for whom, as well as the person to whom, the guaranty shall run, and he is entitled to insist that his obligation shall not be enlarged in any direction or to any extent without his assent. It is of no consequence whether or not he is or may be harmed by the deviation to which he has not assented." 180 App Div 299 (Scott, J., dissenting). (Citation omitted.)

■ We already have rejected defendants' argument parallel to the *McElwain* dissent, that any change in terms of the underlying contract, without more, serves to discharge a guarantor from liability. We also find unpersuasive defendants' suggestion that, because the Oregon merger provisions, unlike the New York statute in *McElwain,* provide that all interests belonging to each of the merged corporations are "transferred to" the single surviving corporation, ORS 57.480(1)(d), the statute cannot be interpreted to impose on a guarantor a term for which the parties did not bargain. We believe that ORS 57.480 expresses the legislative intent that a surviving corporation to a merger should acquire by operation of law all the interests of the merging corporations and that those interests should not in any way be impaired by the merger. *See American Port. Irri. v. Tax Com.,* 255 Or 114, 464 P2d 687 (1970). That the legislature chose to employ the term "transferred" does not mandate otherwise; in the context of ORS 57.480 "transferred" refers to the result obtained by operation of the statute and does not contemplate further acts of the parties to effectuate the statutory purpose.

■ We hold that under ORS 57.480 the guaranty by defendants to BRS survived the merger of BRS and Nike and inured to the benefit of Nike as the surviving corporation.[2] Accordingly, defendants' guaranty for the debts of Barefoot Sports is enforceable by Nike, not only as to pre-merger sales by BRS to Barefoot Sports, but also as to post-merger sales by Nike to Barefoot Sports. This is consistent with the view of other jurisdictions that have considered comparable corporation merger legislation. *See, e.g., CBS, Inc. v. Film Corp. of*

---

[2] Because we conclude that Nike acquired defendants' guaranty by operation of law as a result of its merger with BRS, we reject defendants' contention that summary judgment was inappropriate because there was a question of fact as to whether the parties had an *unexpressed* intention that Nike could not succeed, as transferee, to the guaranty.

*America,* 545 F Supp 1382 (ED Pa 1982) (construing New York, Pennsylvania and Connecticut law); *Metro Corrugated Contain. v. Owens-Illinois Glass Co.,* 185 F Supp 359 (ED NY 1960) (construing Ohio law); *Albers v. McNichols,* 301 Ill App 551, 23 NE2d 220 (1939); *W. H. McElwain Co. v. Primavera, supra.*

■   Our holding that defendants' personal guaranty to BRS inures to the benefit of Nike permits the conclusion that this case falls within the scope of ORCP 4E(4), albeit for a different reason than that argued by Nike. ORCP 4E(4) is applicable here because this action "[r]elates to goods * * * sent from this state by the plaintiff * * * to a third person [Barefoot Sports] when payment for such goods * * * was guaranteed by defendant[s]." Although the facts of this case are within the literal language of that specific provision, under these circumstances our analysis cannot stop there. The Supreme Court has held that mere execution of a guaranty is too tenuous a contact to permit this state to assert personal jurisdiction over the guarantor. *State ex rel Sweere v. Crookham, supra,* 289 Or at 12. Only if the guaranty plays an integral part in causing or promoting significant economic consequences may contacts between the forum state and a foreign corporation be attributed to the guarantors so as to provide a constitutional basis for personal jurisdiction. 289 Or at 9-10. A determination of that issue blends ORCP 4E(4) into the ORCP 4L concept of minimum contacts which, if present, permit the exercise of jurisdiction without offending traditional notions of fair play and substantial justice. *See International Shoe Co. v. Washington,* 326 US 310, 66 S Ct 154, 90 L Ed 95 (1945); *State ex rel White Lbr v. Sulmonetti,* 252 Or 121, 448 P2d 571 (1968).

■   When the necessarily subjective standards of fair play and substantial justice are implicated, we look for the criteria identified in *State ex rel White Lbr. v. Sulmonetti, supra:*

> "First, the defendant must purposefully avail himself of the privilege of acting in the forum state or of causing important consequences in that state. Second, the cause of action must arise from the consequences in the forum state of the defendant's activities. Finally, the activities of the defendant or the consequences of those activities must have a substantial enough connection with the forum state to make the exercise

of jurisdiction over the defendant reasonable." 252 Or at 127. (Citation omitted.)

When personal jurisdiction was predicated on execution of a guaranty, we have found the criteria satisfied in that important economic consequences flowed from that act, because credit was extended in Oregon by a corporation in reliance on the guaranty and because it was reasonable under those circumstances for the guarantor to understand that he would be subject to the jurisdiction of Oregon courts. *White Stag Mfg. Co. v. Wind Surfing, Inc.,* 67 Or App 459, 679 P2d 312 (1984).

Defendants, however, present multiple theories in support of their contention that the criteria are not met here; we find it necessary to address only two. First, defendants Stroick and Kathleen Spencer appear to argue that the criteria are not satisfied as to them, because execution of the guaranty was their only contact with BRS and they had no idea that BRS was an Oregon corporation. Therefore, according to defendants, they did not purposefully avail themselves of the privilege of conducting activities in Oregon and did not have the minimum contacts constitutionally necessary for personal jurisdiction. We reject that argument. We note that correspondence soliciting the guaranty was from Oregon and the evidence that defendant David Spencer mailed the completed guaranty agreement to BRS in Beaverton is undisputed. Assuming that defendants Kathleen Spencer and Stroick lacked certainty that BRS was an Oregon corporation, we believe that in a sophisticated commerical transaction such as this it was their obligation to determine with whom they were contracting and that knowledge must be imputed to them. There is no indication that BRS concealed information from those defendants regarding its corporate location nor any indication that defendants thought they were dealing with a local company. We decline to hold that defendants under these circumstances may rely on their own failure to investigate as a shield against jurisdiction in Oregon.

*State ex rel Jones v. Crookham, supra,* does not require a contrary result. In that case, the court held that the plaintiff, a corporation doing business in Oregon, had failed to sustain its burden of showing that the Idaho defendant had purposefully availed himself of the privilege of doing business

in Oregon. The defendant acquired a copier for personal use through a local company, but the actual lease agreement, although executed locally, was with the out-of-state plaintiff. In denying jurisdiction under ORCP 4L, the court emphasized that the defendant's desire throughout was to deal with a local company so that he could be assured of prompt service, that he thought he had done so and that the copier was for consumer use, and not for resale. Those factors are not present here.

Secondly, we discuss defendants' reliance on *Helicopteros Nacionales de Colombia v. Hall,* 466 US 408, 104 S Ct 1868, 80 L Ed 2d 404 (1984), which defendants assert represents a substantial limitation by the United States Supreme Court on a state's assertion of jurisdiction which applies here. *Hall* involved a wrongful death action brought in Texas arising from a plane crash in Peru. The Court determined that the defendant's contacts with Texas consisted of a contract negotiation session in Texas, purchase of helicopters and equipment by defendant in Texas, payments to defendant by checks drawn on a Texas bank and defendant's personnel receiving training in Texas. The Court rejected the trial court's assessment that the purchases and related training trips supported an assertion of jurisdiction. In so deciding, the Court observed that an earlier case, *Rosenberg Bros. & Co. v. Curtis Brown Co.,* 260 US 516, 43 S Ct 170, 67 L Ed 372 (1923), clearly held that purchases and related trips, standing alone, are not a sufficient jurisdictional predicate.

In *Rosenberg,* the Oklahoma defendant's only connection with the forum state, New York, was the periodic purchase of goods from New York wholesalers. Focusing on that precedent, defendants contend that if purchases alone are not enough, *a fortiori,* a guaranty for such purchases cannot be a basis for jurisdiction. The holding of the *Hall* court, however, is that, "[i]n accordance with Rosenberg, * * * mere purchases, even if occurring at regular intervals, are not enough to warrant a State's assertion of in personam jurisdiction over a nonresident corporation in a cause of action *not related to those purchase transactions.*" 466 US at ___ (80 L Ed 2d at 413). (Emphasis supplied.) The Court expressly reserved the question of whether *Rosenberg* has continuing validity when the cause of action arises out of or relates to the purchases by the defendant in the forum state. 466 US at ___, n 12 (80 L Ed 2d at 413, n 12). In this case, there is no question but that the

cause of action relates to purchases in Oregon. We conclude that neither *Rosenberg* nor *Hall* is controlling here, and we decline to deny jurisdiction over defendants on that authority.

We conclude that, under ORCP 4E(4), construed in conjunction with ORCP 4L, the trial court properly exercised personal jurisdiction over defendants. There is evidence that Nike extended credit and shipped goods to Barefoot Sports from Oregon, causing significant economic consequences in this state. The critical factor of reliance on the guaranty is established by evidence that BRS would not have extended credit to Barefoot Sports without defendants' continuing personal guaranties. We impute to Nike continuing reliance on the guaranty in extending further credit to Barefoot Sports after the merger. *See Gaswint v. Amigo Motor Homes,* 265 Or 248, 509 P2d 19 (1973) (because surviving corporation in merger was responsible under ORS 57.480(5) for merged corporation's obligations, plaintiff in wrongful discharge action based on alleged employment contract with merged corporation not required to prove express employment contract with surviving corporation); *cf. State ex rel Sweere v. Crookham, supra* (no showing of reliance where execution of guaranty occurred several months after goods delivered). Under these circumstances, defendants reasonably should have understood that, if a problem arose over credit extended to Barefoot Sports for goods purchased from plaintiff, they would be subject to personal jurisdiction in Oregon. *See White Stag Mfg. Co. v. Wind Surfing, Inc., supra,* 67 Or App at 465.

Defendants' second assignment of error, that the trial court erred in denying their motion to dismiss for failure to state ultimate facts sufficient to constitute a claim, ORCP 21A(8), raised only the question of whether defendants' guaranty to BRS inured to the benefit of Nike. Our holding that Nike succeeded to the guaranty by operation of law under ORS 57.480 disposes of that assignment.

Finally, we reach the substance of defendants' third assignment, that summary judgment was granted to Nike improvidently because genuine issues of material fact remained. We view the record on summary judgment in the light most favorable to defendants and give them the benefit of all reasonable inferences which can be drawn from the

pleadings and affidavits. *Forest Grove Brick v. Strickland,* 277 Or 81, 87, 559 P2d 502 (1977).

Nike's complaint was filed on June 3, 1983. Nike alleged, *inter alia,* that Barefoot Sports had filed bankruptcy proceedings in July, 1982, that defendants in July, 1979, had executed personal guaranties for Barefoot Sports' debts and that defendants' indebtedness to Nike as of May 15, 1983, amounted to $152,326.76, plus interest of $28,775.91, representing the unpaid portion of charges for goods sold and delivered by plaintiff to Barefoot Sports. Appended to the complaint and incorporated by reference into it was a statement from "Nike, Inc." to Barefoot Sports dated December 31, 1982, showing numerous charges, some with and some without invoice dates noted. The invoice dates shown range from September 15, 1981, to September 16, 1982.

Nike filed its motion for summary judgment on December 7, 1983, relying on the affidavit of Nike's general credit manager, Cook. The affidavit asserts only that "prior to March of 1983" "plaintiff" delivered goods to Barefoot Sports, and that the unpaid principal balance of Barefoot Sports' account through May 15, 1983, was $151,892.16. Attached to Cook's affidavit is an account statement from "Nike, Inc." dated February 28, 1983; two of the invoice dates for charges shown on that statement are September 15, 1981, and November 23, 1981.

By affidavit defendant Stroick testified that none of the unpaid balance represents sales by BRS to Barefoot Sports. Defendants argue that, even if their guaranty is deemed to run to the benefit of Nike, summary judgment should not have been granted, because factual issues as to the amount of damages remained.[3] We agree. Nike has neither

---

[3] Defendants' argument is based primarily on exhibits attached to Nike's credit manager's affidavit offered in opposition to defendants' motion to dismiss under ORCP 21A(8). Over 40 of those exhibits, which show itemized charges for goods shipped from Nike to Barefoot Sports, show an order date of December 11, 1981; a comparison of those exhibits with the account statement attached to Nike's complaint shows that charges for those orders are included in the unpaid balance which Nike seeks to recover in this action. Although it appears that the same trial judge heard both defendants' motion to dismiss and plaintiff's motion for summary judgment on the same date, and although Nike does not contest defendants' reference to those exhibits under defendants' argument to this court on the summary judgment issue, we do not rely on them in determining that a fact issue exists, and we need not decide whether those exhibits properly are part of the record on summary judgment.

pled nor offered evidence that the unpaid balance represents *only* pre-merger sales by BRS and post-merger sales by Nike to Barefoot Sports. Nike has a right to enforce the guaranty against defendants only in reference to pre-merger sales by BRS and post-merger sales by Nike. Because it appears from the record that a fact question exists as to whether Nike is seeking to recover against defendants for credit extended by Nike on at least two occasions before its merger with BRS on December 31, 1981, even if the facts are otherwise as stated in Nike's pleadings and affidavits, summary judgment was inappropriate. *See Glassner v. Northwest Luster Craft Co.*, 39 Or App 175, 591 P2d 419 (1979).

Affirmed in part, reversed in part.