The **COMMERCIAL AGENCY, an Oregon corporation, Plaintiff,**

v.

**Lamar T. LOE, Defendant.**

**Civ. A. No. J86–0661(L).**

United States District Court,
S.D. Mississippi,
Jackson Division.

July 17, 1987.

---

Richard A. Uffelman, Portland, Or., Thomas M. Murphree, Jamie G. Houston, III, Jackson, Miss., for plaintiff.

John Henegan, Jackson, Miss., Ronald H. Hoevet, Portland, Or., for defendant.

## MEMORANDUM OPINION AND ORDER

TOM S. LEE, District Judge.

This cause is before the court on the motion of defendant Lamar T. Loe for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff The Commercial Agency (TCA) has timely responded to the motion and the court has considered the memoranda of authorities together with attachments submitted by the parties.

This action was originated by TCA, an Oregon corporation, in the United States District Court for the District of Oregon but was subsequently transferred to the Southern District of Mississippi. Plaintiff

in this suit seeks to recover a deficiency judgment from defendant due after plaintiff's repossession and sale of certain collateral pursuant to Article 9 of the Uniform Commercial Code. In support of his motion for summary judgment, defendant Loe contends that plaintiff's suit is time-barred by the Mississippi one-year statute of limitations applicable to deficiencies on installment notes secured by personal property, Miss. Code Ann. § 15-1-23 (1972). TCA asserts that the applicable limitations period is prescribed by Oregon law, not Mississippi law, and is the six-year statute of limitations set forth at Or.R.Stat. § 12.080 (1983). Alternatively, TCA argues that even assuming Mississippi law is applicable regarding the appropriate limitations period, the general six-year statute of limitations provided in Miss. Code Ann. § 15-1-49 (1972) is applicable rather than section 15-1-23 as urged by defendant.

In a case such as this which has been transferred from a district court in one state to a district court in another state, "the transferee court must first decide which state's choice of law rules it should apply in determining which state's statute of limitations should be applied." *Ellis v. Great Southwestern Corp.*, 646 F.2d 1099, 1107 (5th Cir.1981). Ordinarily, a federal court sitting in diversity must apply the choice of law rules of the state in which it sits "to determine whether the state courts of that state would apply their own state's statute of limitations or the statute of limitations of some other state." *Id.* at 1103 (quoting *Baron Tube Co. v. Transport Insurance Co.*, 365 F.2d 858, 860 (5th Cir.1966) (en banc)). Where a case has been transferred, however, complications arise, and the transferee court must determine whether to apply the choice of law rules of the state in which it sits or of the state in which the transferor court sits. *Ellis*, 646 F.2d at 1103. This, in turn, often depends on "which party requested the transfer, the reasons behind the transfer, and the statute authorizing the transfer." *Id.*

The two general change of venue statutes are 28 U.S.C. § 1404(a)(1976) and 28 U.S.C. § 1406(a)(1976). Section 1404(a) provides for transfer of any civil action by a district court to any other district or division in which the action could have been brought "[f]or the convenience of parties and witnesses, in the interest of justice...." Under section 1406(a), where a case has been filed "laying venue in the wrong division or district," the district court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."

At the time of the transfer of the present action, there was pending before the Oregon court a motion of defendants Lamar T. Loe and Lamar Loe Leasing Company, Inc.[1] to dismiss for lack of personal jurisdiction. That motion, which was filed on August 13, 1986, had not been responded to by TCA when the district court in Oregon, on September 19, 1986, transferred the action *sua sponte* to the Southern District of Mississippi. The Oregon court did not rule on the motion to dismiss and the order of transfer does not indicate the reason for transfer nor does it reflect whether the transfer was pursuant to section 1404(a) or section 1406(a).[2] Under the facts presented, the issue of whether the Oregon court had personal jurisdiction over defendant is substantially intertwined with the choice of law issue presented. Accordingly, this court must determine whether the transferor court, the Oregon court, had *in personam* jurisdiction over the defendant.[3]

---

1. Lamar Loe Leasing Company was previously dismissed by memorandum opinion and order of this court dated December 29, 1986 since its liability in this transaction was limited to certain property it had pledged as collateral for Loe's debt. Thus, it was not subject to liability for any deficiency arising after the sale of that collateral.

2. The order of transfer provides, in its entirety, as follows:

    It is hereby ordered this action is transferred to the Southern District of Mississippi.

3. Since TCA, at the time of transfer, had not responded to the pending motion to dismiss for lack of personal jurisdiction in the Oregon court, this court requested and received a response to that motion together with a memoran-

■ The traditional analysis applied to determine if personal jurisdiction is appropriate involves a two-part inquiry. First, the court must determine whether the Oregon long-arm statute would permit an Oregon court to acquire personal jurisdiction over defendant and, if so, whether the assertion of jurisdiction over defendant offends due process rights guaranteed by the fourteenth amendment. *White Stag Mfg. Co. v. Wind Surfing, Inc.*, 67 Or.App. 459, 679 P.2d 312 (Ct.App.1984). Under the Oregon long-arm statute, Or.R.Civ.P. 4, specific bases for exercising jurisdiction are enumerated in subsections B through K. Subsection L is a catch-all provision which provides that a court having jurisdiction of the subject matter has jurisdiction over a party properly served,

[n]otwithstanding a failure to satisfy the requirement of sections B. through K. of this rule, in any action where prosecution of the action against a defendant in this state is not inconsistent with the Constitution of this state or the Constitution of the United States.

Thus, subsection L "extend[s] personal jurisdiction to the outer limits of due process under the Fourteenth Amendment of the United States Constitution." *State ex rel. Hydraulic Servocontrols v. Dale*, 294 Or. 381, 384, 657 P.2d 211 (1982). In the present case, TCA does not assert that any of the specific provisions of the long-arm statute apply. Therefore, the burden is on TCA to allege and prove facts sufficient to establish jurisdiction under subsection L. *See Nike, Inc. v. Spencer*, 75 Or.App. 362, 707 P.2d 589, 591, 592 (1985). In this sense, the issue of long-arm jurisdiction is merged with the issue of due process protection, and the court must inquire whether the transaction between these parties presents sufficient minimum contacts such that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice. *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945); *White Stag Mfg. Co.*, 67 Or.App. 459, 679 P.2d at 315. For the exercise of jurisdiction by the Oregon court to be constitutional, the relevant requirements are as follows:

First, the defendant must purposefully avail himself of the privilege of acting in [the State of Oregon] or of causing important consequences in that state. Second, the cause of action must arise from the consequences in the forum state of the defendant's activities. Finally, the activities of the defendant or the consequences of those activities must have a substantial enough connection with the forum state to make the exercise of jurisdiction reasonble.

*State ex rel. White Lbr. v. Sulmonetti*, 252 Or. 121, 127, 448 P.2d 571, 574 (1968) (citation omitted).

It is the defendant's contacts with the forum state which make it reasonable for that state to extend the territorial limits of its power and exercise jurisdiction. One way to judge that reasonableness is by the foreseeability of suit in the forum state.... What is relevant for due process is the foreseeability of being haled into the forum state's court, and it is "the defendant's conduct in connection with the forum state,"... that provides that expectation rather than any "unilateral activity" of a plaintiff.... [Thus] "when a corporation 'purposefully avails itself of the privilege of conducting activities within the forum state, ... [he] has clear notice that [he] is subject to suit there.'"

*State ex rel. Hydraulic Servocontrols*, 294 Or. 381, 657 P.2d at 214–15 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)). Under the facts presented, this court is of the opinion that defendant Loe's contacts with the State of Oregon were *de minimis* and insufficient to support the exercise of jurisdiction by an Oregon court over him.

According to the affidavit of Loe submitted in support of his motion to dismiss, Loe was contacted by an individual from Texas, Joe Fisher, who inquired as to whether Loe would be interested in purchasing a 1966 Gates Lear jet. Loe trav-

dum of authorities from TCA and a rebuttal brief from Lamar T. Loe.

elled to the Dallas-Fort Worth Airport, inspected the plane and indicated a willingness to purchase. When Loe inquired of Fisher regarding the availability of financing, Fisher indicated that he would attempt to make contacts for Loe for the purpose of obtaining financing. Subsequently, Loe was contacted by representatives of Bancorp Financial Inc. (Bancorp) from Denver, Colorado who discussed financing Loe's purchase of the plane and requested that Loe mail a financial statement to Bancorp's offices in Denver. After several telephone calls between Loe and Bancorp's financial office, it was agreed that Bancorp would finance Loe's purchase of the jet. Bancorp representatives flew from Denver to Texas where the transaction was consummated at the Dallas-Fort Worth Airport. At the closing, Loe learned that his payments were to be mailed to Bancorp's Oregon offices. The installment note executed by Loe provided that it was to be paid "at Portland, Oregon." A security agreement executed by Lamar Loe Leasing Company and signed by Loe in his capacity as president of that company, recited that it was to be governed by the laws of Oregon.[4] Loe states, though, that he was unaware that Bancorp was an Oregon corporation.

Loe's disbursement authorization, signed at the closing, was addressed to Bancorp's Englewood, Colorado office and directed Bancorp to wire transfer the loan proceeds from Colorado to Loe's bank account in Mississippi. According to Loe's affidavit, which is uncontradicted by any affidavit or other proof of plaintiff, all communications between Loe and TCA were by interstate mail or interstate telephone and were initiated at TCA's instance. Loe mailed the payments as they became due to Bancorp's Oregon offices, but discontinued payments after having made several payments. A Mississippi resident, hired by Bancorp, took possession of the collateral in Mississippi and transported it to Texas where it was later sold by private sale to a Texas compa-

ny. Subsequently, Bancorp assigned its interest to TCA.

Plaintiff contends that the fact that the specific provision in the promissory note requiring that payments be made to the lender in the state of Oregon, together with an unknown number of telephone calls and letters between Loe and TCA's Oregon office, was sufficient contact such that Loe could have foreseen being haled into the Oregon courts. Moreover, plaintiff asserts that Loe's failure to pay his debt in accordance with the note's terms had an adverse economic impact on the lender in the state of Oregon which justifies the exercise of jurisdiction by an Oregon court.

In support of its contentions, plaintiff relies on a number of Oregon cases. However, in each of those cases, the contacts between the defendant and Oregon were much more substantial than those which are present here. For example, in *White Stag Manufacturing Company*, the plaintiff, an Oregon corporation, brought an action against a non-resident guarantor. The defendant had contacted the plaintiff's credit office in Oregon to convince plaintiff to extend credit to a third party, had made numerous phone calls to plaintiff's credit office in Oregon over a period of months and had subsequently guaranteed payment of that third party's debt to the plaintiff's Oregon office. *White Stag Mfg. Co.*, 67 Or.App. 459, 679 P.2d at 315. Unlike Loe, the non-resident defendant in that case had chosen specifically to deal with an Oregon corporation, and the Oregon plaintiff's reliance on his guarantee was the basis on which the decision to extend credit was made. *Id.* at 315–16. Similarly, in *Nike, Inc. v. Spencer*, 75 Or.App. 362, 707 P.2d 589 (1985), an action was brought to enforce a guaranty agreement between non-resident defendants and an Oregon corporation for the debts of a non-resident corporation. The third party debtor, of which the non-resident defendants were officers, had applied to the plaintiff Oregon corporation for an open credit account. The Ore-

---

**4.** The security agreement was entered into by Lamar Loe Leasing Company and signed by Loe in his capacity as president of the company. The court notes that this action is not for the enforcement of the security agreement but to recover a deficiency on the installment note executed by Loe individually.

gon corporation requested personal guaranties from defendants who, in response to a request from plaintiff, provided personal financial statements and ultimately provided a signed guaranty agreement to plaintiff at its Oregon address. The court concluded that while the

> mere execution of a guaranty is too tenuous a contact to permit this state to assert personal jurisdiction over the guarantor, ... if the guaranty plays an integral part in causing or promoting significant economic consequences ... [then] contacts between the forum state and a foreign corporation [may] be attributed to the guarantors so as to provide a constitutional basis for personal jurisdiction.

*Nike,* 75 Or.App. 362, 707 P.2d at 596 (citing *State ex rel. Sweere v. Crookham,* 289 Or. 3, 609 P.2d 361 (1980)). The court concluded that under the circumstances, "defendants reasonably should have understood that, if a problem arose over credit extended to [the debtor] for goods purchased from plaintiff, they would be subject to personal jurisdiction in Oregon." *Id.* 707 P.2d at 597. In both *White Stag Manufacturing* and *Nike,* the defendant guarantors knew that the plaintiffs, Oregon corporations located in Oregon, were extending credit in Oregon on the strength of the guaranty of each respective out-of-state defendant. Under those circumstances, the Oregon Court of Appeals determined that it was reasonable for each guarantor to understand that the guaranty might ultimately be subject to enforcement in the Oregon courts. The court is persuaded that this element of deliberate contacts in Oregon by the guarantor is not present in the case *sub judice.*

In the court's opinion, this case more closely resembles *State ex rel. Sweere v. Crookham,* 289 Or. 3, 609 P.2d 361 (1980), in which personal jurisdiction was found to be lacking. The defendant in that case was an Idaho citizen who owned an Idaho corporation doing business in Idaho. A representative of a local Idaho company approached the defendant about purchasing a new copier for his business. Defendant decided that he would buy or lease a copier from the company, and entered into an arrangement with the plaintiff, a Massachusetts corporation doing business in Oregon, to lease the copier. Plaintiff's name and its Portland, Oregon address appeared at the top of the lease documents. Defendant signed the lease papers in Idaho and took possession of the copier in Idaho. He made two payments for the copier in Idaho, then began to receive monthly statements from plaintiff, and thereafter mailed his payments directly to plaintiff's Portland, Oregon office. When defendant discontinued payments under the agreement, plaintiff instituted suit in an Oregon state court. The issue was framed by the Oregon Supreme Court as

> [W]hether [defendant], by signing a contract with a corporation doing business in Oregon and sending monthly payments pursuant to that contract, purposefully avails himself of the privilege of conducting activities within Oregon, thus invoking the benefits and protections of our laws to an extent that it is fair and reasonable for an Oregon court to exert jurisdiction over him.

*State ex rel. Jones v. Crookham,* 296 Or. 735, 738, 681 P.2d 103, 105 (1984). Since there was nothing to indicate that the nonresident had chosen to deal with an Oregon firm rather than one from Idaho or any other state, the court concluded that neither the activities nor the consequences relied on by the plaintiff were sufficient for Oregon to have jurisdiction over defendants. The court found it "significant" that the defendant was not attempting to sell anything to Oregon residents, but was leasing equipment to help him run his business in Idaho. *Id.* at 107. He "was occupying the role of a consumer, as opposed to a merchant, or someone involved in reselling merchandise." *Id.*

Similarly, the defendant in the present case did not choose to deal with an Oregon firm and, like the defendant in *Jones,* was not attempting to sell anything to Oregon residents but was purchasing equipment, a plane, to help him run his businesses in Mississippi, Texas and Florida. Further, the court notes that in *Jones* the defendant

himself did not make the initial contact with plaintiff. Rather it appeared that some third party had actually made the initial contact with the plaintiff who in turn contacted defendant. Likewise, in the present case, a third party, Joe Fisher, contacted Bancorp which in turn contacted Loe. The *Crookham* court's synopsis of the pertinent facts in that case applies equally here:

> Boiled down, [defendant] in Idaho signed a contract with a corporation doing business in Oregon and sent some monthly payments to that corporation at its place of business in Oregon.

*See also Colonial Leasing Co. of New England, Inc. v. Pugh Bros. Garage,* 735 F.2d 380, 383 (9th Cir.1984) (personal jurisdiction lacking under Oregon law where defendants' only contacts with Oregon were signing contract with corporation doing business in Oregon and making monthly payments to Oregon; such contacts insufficient to require non-resident to litigate contract action in Oregon).

■ TCA has the burden of proof to establish a prima facie case of personal jurisdiction over Loe, a non-resident of the forum where the action was originally filed. *See Cannon v. Tokyu Car Corp.,* 580 F.Supp. 1451, 1452 (S.D.Miss.1984). Plaintiff has failed to submit any affidavits or other evidentiary materials relevant to the personal jurisdiction issue, and the affidavits of Lamar Loe and accompanying exhibits stand uncontradicted in the record. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The court has considered the issue and finds that TCA has failed to carry its burden of proof to establish that a sufficient relationship exists among the defendant, the forum and the litigation to subject Loe to the personal jurisdiction of the Oregon district court. *Shaffer v. Heitner,* 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977). It follows, therefore, that since the Oregon court, the transferor court, lacked personal jurisdiction over defendant, regardless of whether the transfer from that court was

pursuant to section 1404(a) or section 1406(a), the applicable choice of law rules are those of the state in which the transferee court sits, i.e., Mississippi. *See Ellis,* 646 F.2d at 1107. And, in this case, the court is of the opinion that a Mississippi state court would apply its own statute of limitations. *See Cowan v. Ford Motor Co.* 694 F.2d 104, 107 (5th Cir.1982); *see also Davis v. National Gypsum Co.,* 743 F.2d 1132, 1134 (5th Cir.1984). The issue which this court must now determine is what statute of limitations under Mississippi law is applicable to the present controversy.

■ Section 15–1–23 provides in pertinent part as follows:

> In all cases, no suit or action shall hereafter be commenced or brought upon any installment note, or series of notes of three or more, whether due or not, where said note or notes are secured by mortgage, deed of trust, or otherwise, upon any property, real or personal, unless the same is commenced or brought within one year from the date of the foreclosure or sale of the property pledged as security for said note or notes.

It is undisputed that this is an action on the installment note executed by Loe. That note was secured by a security agreement executed not by Lamar Loe individually, but by Lamar Loe Leasing Company. Finally, this action was not commenced within one year from the date of the foreclosure and sale of the collateral pledged as security for the installment note.[5] Plaintiff concedes these facts, as it clearly must, but nevertheless takes the position that section 15–1–23 is the incorrect statute of limitations to be applied since that section applies only where the maker of the note and the party granting the security interest are the same. According to plaintiff, the general six-year statute of limitations, Miss.Code Ann. § 15–1–49 (1972), prescribes the appropriate limitations period.

In support of its position, TCA argues that since the purpose of the one-year statute of limitations has the effect of substantially shortening the normal six-year period

---

5. The sale of the property that was security for the installment note occurred on July 15, 1983.

Plaintiff did not file its complaint until June 9, 1986, almost three years later.

of limitations under certain circumstances, it imposes a harsh result on certain secured lenders who are either dilatory or unaware of the existence of the one-year statute. This result, it claims, while it may have been in keeping with the original purpose of the one-year statute,[6] is not justified in the context of modern commercial transactions. In response to this contention, the court would note that in any case where a statute of limitations is applied to bar an action, the party seeking relief may perceive the result as "harsh." It may seem particularly harsh to one who was, in plaintiff's terms, "dilatory or unaware of the existence" of such statute. In this vein, plaintiff appears to be arguing simply that because it failed to timely file its action, application of the statute of limitation as a bar is a "harsh" result which should not be allowed. This contention is without merit.

Plaintiff next asserts that section 15–1–23 is in direct conflict with the basic concept provided in the Uniform Commercial Code that a secured party's remedies are cumulative and that application of the one-year statute to bar plaintiff's claim against the defendant effectively precludes the plaintiff from exercising its cumulative remedies. Article 3 of the Uniform Commercial Code contemplates and provides for recovery of a monetary judgment against the maker of a promissory note after default. *See* Miss. Code Ann. § 75–3–122 (1972). Article 9 contemplates and provides for the remedy of foreclosure upon collateral to secure payment of a promissory note. *See* Miss. Code Ann. § 75–9–501 (1972) *et seq.* And, the UCC specifically adopts the concept that all remedies which a lender or creditor may have are cumulative rather than elective. Miss. Code Ann. § 75–9–501 (1972).

TCA argues that the application of the one-year statute bars one of the remedies which Bancorp, and the plaintiff as its assignee, would have had available since, had there been no foreclosure on the collateral, plaintiff would have had available the remedy of pursuing a monetary judgment

against the defendant on the note under the six-year statute of limitations provided in section 15–1–49. The one-year statute, it claims, is in effect an election of remedies statute in direct conflict with the concept of cumulative remedies under the UCC. Therefore, according to plaintiff, it should be repealed under Miss. Code Ann. § 75–10–103 (1972), a general repealer statute repealing all laws and parts of laws which were inconsistent with the UCC. The court has considered plaintiff's position and concludes that the one-year statute is not, as plaintiff contends, an election of remedies statute. Even a lender who exercises its remedy of foreclosure may still exercise the remedy of pursuing a monetary judgment against the debtor on the note. It is simply restricted in terms of the time period within which it must do so. Thus, plaintiff is not precluded from exercising its cumulative remedies, so long as it does so in a timely manner. Consequently, the court cannot accept plaintiff's position.

■ Plaintiff finally asserts, in its battle to overcome the potential permanent bar to its ability to recover a deficiency judgment from defendant, that section 15–1–23 should not be applied to bar a suit against the maker of a note who has not given a security interest in the collateral to secure payment of the note and against whom no foreclosure has taken place. It argues that since the installment note executed by Loe was not secured by property owned by Loe, but rather by property owned by Lamar Loe Leasing Company, then Loe individually should not be allowed to assert section 15–1–23 as a bar to his liability. In support of its position, TCA relies on cases in which the Mississippi Supreme Court has concluded that section 15–1–23 does not apply to a suit on a separate guaranty. *See First National Bank of Columbus v. Drummond*, 419 So.2d 154 (Miss.1982); *W.T. Raleigh Company v. Fortenberry*, 138 Miss. 410, 103 So. 227 (1925). In the court's opinion, the analogy drawn by plaintiff is

---

**6.** Miss. Code Ann. § 15–1–23 was originally enacted in 1934 in response to the multitude of depression foreclosures, "for the purpose of alleviating to some extent distressed mortgage debtors." *Lewis v. Simpson,* 176 Miss. 123, 167 So. 780, 781 (1936).

an inappropriate one. The defendant guarantors in both *Drummond* and *Fortenberry* were sued on separate unconditional guaranty contracts executed by them. That is, the suit was not on an installment note but rather on separate contractual undertakings by those defendants to pay, irrespective of the liability of the principal debtor.

The language of the statute is clear in this court's opinion and makes no exception of the type argued for by plaintiff. The statute states that no action shall be commenced on any installment note where the note is secured by mortgage, deed of trust or otherwise upon *any property* unless commenced within one year from the date of foreclosure or sale of the property. The statute does not limit the property pledged as security to property of the maker of the note. The language of section 15–1–23 must be given its plain meaning and in the court's opinion, the plain meaning of the statute operates to bar this action.

> If this be an austere rule that is wanting in justice then section [15–1–23] presents a problem for legislative consideration and correction. It is beyond the cable-tow of judicial remedy.

*Guthrie v. Merchants National Bank of Mobile,* 254 Miss. 532, 180 So.2d 309 (1965). The court concludes that as a matter of law, this action is barred by the one-year statute of limitations set forth in Miss. Code Ann. § 15–1–23.

Accordingly, it is ordered that the defendant Lamar T. Loe's motion for summary judgment is granted.