# SUMNER et ux,
*Appellants,*

*v.*

# ENERCON DEVELOPMENT COMPANY et al,
*Defendants,*

*and*

# HOWCO INVESTMENT CORPORATION,
*Respondent.*

(31735; CA A40765)

779 P2d 150

Asa L. Lewelling, Salem, for appellants.

Jeffrey M. Batchelor, O. Meredith Wilson, Jr., and Spears, Lubersky, Campbell, Bledsoe, Anderson & Young, Portland, for respondent.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

BUTTLER, P. J.

## BUTTLER, P. J.

This case is before us on remand from the Supreme Court to decide whether the trial court erred when it found that plaintiffs' breach of their land sale contract with Enercon Development Company (Enercon) released the guarantor, Howco Investment Corporation (HIC).[1]

The underlying facts are set out in our former opinion, *Sumner v. Enercon Development Company,* 92 Or App 406, 759 P2d 286 (1988), *rev'd* 307 Or 579, 771 P2d 619 (1989), and will not be repeated here. We held that, when plaintiffs elected to foreclose their purchase money mortgage, they were precluded thereafter from seeking recovery against HIC as guarantor of the debt by virtue of ORS 88.070, which prohibited plaintiffs from obtaining a deficiency judgment against Enercon. Because of that holding, it was not necessary for us to consider HIC's closely related contention that, even if the statute did not preclude plaintiffs from enforcing HIC's guaranty, the loss of its subrogation rights against Enercon as a result of plaintiffs' election to foreclose released HIC from its guaranty. If plaintiffs had not foreclosed and HIC had paid according to the guaranty, HIC could have sued Enercon on the debt. The general rule is that, by discharging the obligation of the principal, the surety is subrogated to the rights of the creditors. *Delaney v. Georgia-Pacific Corp.,* 278 Or 305, 312, 564 P2d 277 (1977); 73 Am Jur 2d, "Subrogation," § 53. The surety is subrogated only to the creditor's rights and remedies that existed immediately before payment by the guarantor. *Mayer v. First National Bk. of Oregon,* 260 Or 119, 130, 489 P2d 385 (1971). Because plaintiffs could not obtain a personal judgment against Enercon, neither may HIC, unless the Supreme Court's holding in this case implicitly permits it to do so. If it does not permit that, it appears that HIC is correct in stating that it is released from its guaranty. *See Marshall-Wells Company v. Tenney et al.,* 118 Or 373, 244 P 84 (1926).

The Supreme Court disagreed with our holding that

[1] The Supreme Court inadvertently stated that defendant "Howco Development Company," instead of HIC, was the guarantor. As a result, its remand directs us to consider the effect of a breach of the contract on the wrong party. In this opinion, we treat the remand as relating to HIC, the guarantor.

ORS 88.070 prohibits plaintiffs from enforcing HIC's guaranty. In doing so, it held that the statute "merely places a limit on the trial court's authority to enter a deficiency judgment; it has no effect on the existence of the underlying debt. * * * [T]he court has no authority to render a 'certain kind of judgment,' *i.e.,* a deficiency judgment." 307 Or at 582. The court then considered whether plaintiffs' right to recover from HIC depends on plaintiffs' right to proceed against Enercon. It concluded that it did not, because:

> "ORS 88.070 does nothing more than bar a deficiency judgment against a purchase money mortgagor. It does not extinguish the debt; it merely closes the avenue for collecting it. And even this limitation has no effect on a separate action to recover damages under a guarantee." 307 Or at 584.

The court remanded the case to us to consider only HIC's breach of contract claim.

Given the court's emphasis on the nature of a deficiency judgment and its narrow direction on remand, we conclude that the court must have decided implicitly that HIC, after paying on the guaranty, would not be barred from suing Enercon for the amount that it paid plaintiffs under its guaranty.[2] Although a judgment against Enercon would be a personal judgment, it would not be a "deficiency judgment," because it would not have been entered in the foreclosure proceeding—the avenue that the court said is closed by the statute.[3] Accordingly, we turn to the question that we were directed to consider on remand.

After a trial to the court, the court made detailed findings, none of which is challenged by plaintiffs. On September 17, 1980, plaintiffs sold a real estate development to

---

[2] If the court did not do so, it did not resolve the ultimate question on review, which was whether plaintiffs' election to foreclose barred them from proceeding against the guarantor, either because ORS 88.070 prohibited it or because plaintiffs' action defeated HIC's subrogation rights. We have to presume that it intended to resolve that ultimate question.

[3] Although a judgment in a separate action would not, technically, be a deficiency judgment, the effect would be the same: collecting more from the mortgagor-debtor than was derived from the sale of the mortgaged property. By the same reasoning, however, there would be no reason why the mortgagee could not maintain a separate action against the debtor for the balance due. We had thought that ORS 88.070 prohibits that. Normally, we would consider changes from that result to be a matter of policy for the legislature; but that appears to be water over the dam.

Enercon. At the same time, HIC executed a guaranty in plaintiffs' favor, which was attached to the contract:

> "In consideration of the inducement of [plaintiffs] to enter into the within contract with [Enercon], the undersigned, jointly and severally guarantee to [plaintiffs], the performance of all provisions of this contract to be performed by [Enercon], including the payment of money and other obligations of [Enercon] as contained therein."

The contract contemplated that Enercon would pay plaintiffs from sales proceeds and that plaintiffs, who held a purchase money mortgage on each parcel, would deposit any necessary releases in escrow to accomplish a sale. The contract provided that Enercon would pay plaintiffs $5,000 for each sale but not less than $65,000 semi-annually.[4] In July, 1981, Enercon made its first $65,000 semi-annual payment and asked plaintiffs to deposit in escrow releases for 13 specifically described residential units. Plaintiffs did not do so.

The parties subsequently modified the contract twice. As required by the March 1, 1982, modification, Enercon deposited a $65,000 check in escrow with instructions that

---

[4] The court found:

"Article III H.(1), (2) and (3) of the Contract contemplated that Enercon was to pay plaintiffs from the proceeds of its anticipated sales. Specifically, plaintiffs were to receive $5,000 from Enercon's sale, occupancy or rental of each newly built residential unit, one-half the net proceeds from its sale of Enercon's four existing units and one-half the net proceeds from its sale of commercial property.

"Article III H.(4) of the Contract provided that Enercon would pay to plaintiffs a minimum of $65,000 semi-annually, commencing July 1, 1981, in the event and to the extent that plaintiffs received less than this amount from the proceeds of sales as contemplated by the Contract. The balance of Enercon's obligation to plaintiffs, if any remained, was to be due and payable on July 1, 1984.

"Plaintiffs held a purchase money mortgage on each and every parcel of [the development] to secure Enercon's payment of the entire contract balance.

"Article VI, §§ B and D of the Contract provided:

" 'Upon sale or lease of any part of the property by ENERCON as provided in Subparagraph III H.(1), (2) and (3) above, [plaintiffs] agree to deposit in escrow any and all releases deemed necessary by ENERCON to accomplish the sale or lease of all or any part of the property contemplated by sub-paragraph III H.(1), (2) and (3) above.'

" '* * * * *

" 'All instruments required to be executed by [plaintiffs] in accordance with the provisions of this paragraph shall, at the request of ENERCON, be pre-signed by [plaintiffs] and delivered in an escrow mutually acceptable to the parties, together with appropriate escrow instructions consistent with terms of this agreement. The cost of this escrow will be borne by ENERCON.' "

it be disbursed to plaintiffs on the condition that plaintiffs release 26 residential units immediately upon acceptance, before withdrawing the $65,000 from escrow.[5] On March 2, 1982, plaintiffs agreed to the modification in writing, but they did not deposit any releases. Plaintiffs, however, withdrew the $65,000 after they executed an indemnity agreement in favor of the title company.

The March 1 modification failed.[6] The parties, including HIC, agreed to a further modification on July 9, 1982. It required plaintiffs, as requested by Enercon, to release their mortgage lien on unit 15 for sale to the Oregon Carpet Warehouse. Plaintiffs deposited a release for that unit in escrow on January 6, 1983, but accompanied it with instructions that made it virtually impossible for the escrow agent to deliver it to Enercon. After the title company tried unsuccessfully for several months to get plaintiffs to waive their conditions or deposit another release, plaintiffs finally provided a waiver of the escrow conditions on May 8, 1983, and the release was delivered.

The court found that the failure to release the 13 specifically described lots when the $65,000 minimum payment was made in July, 1981, was a breach of contract by plaintiffs. It also found:

"No sales of lots were ever lost by Enercon as a result of any breach of contract or any other action or inaction on the part of the plaintiffs.

"HIC's risk as guarantor was not materially increased by plaintiffs' failure to place the 13 partial releases of mortgage into escrow which Enercon requested in July 1981.

"* * * * *

---

[5] The court found that this modification was part of a plan to sell part of the property to HIC. The $65,000 check was supplied by HIC.

[6] The court found:

"On April 13, 1982, plaintiffs, who had still not released any property * * * declared to Enercon in writing that as far as they were concerned the terms of the March 1, 1982 letter no longer modified the original contract because [Enercon failed to make a payment on March 21, 1982 as required].

"On May 5, 1982, HIC's attorney notified plaintiffs that it considered them to be in breach of the March 1, 1982, modification by failing to deposit partial mortgage releases into escrow for 26 residential units * * *. HIC warned plaintiffs at that time that they [sic] were preserving all their rights as guarantor."

> "HIC's risk as Enercon's guarantor was not materially increased by the combined effect of plaintiffs' conduct * * *."

The trial court also concluded that HIC's consent to the July 9, 1982, modification did not constitute a waiver of any defenses relating to that breach.[7] It held that, even though plaintiffs' breach did not increase the risk of HIC as guarantor, the breach resulted in the release of HIC.

The court apparently based its ultimate conclusion that plaintiffs' breach discharged HIC as guarantor on its conclusion that

> "[a] guarantor under a simple guaranty containing no waiver of defenses is discharged by any breach by the guaranteed party (creditor), regardless of extent, of a duty in the principal contract whose performance is important to the debtor's ability to perform its duties thereunder."

The court, however, did not find that plaintiffs' breach was important to Enercon's ability to perform its duties under the contract; it expressly found that Enercon lost no sales of lots as a result of any breach by plaintiffs and that HIC's risk as guarantor was not materially increased as a result of plaintiffs' breach (or as a result of the combined effect of plaintiffs' conduct).

■ The question is whether the trial court's unchallenged findings support its conclusion that plaintiffs' breach, or breaches, that did not materially increase HIC's risk released HIC from its guaranty. HIC contends that they do, because any breach will release a guarantor. It relies on *Ebco, Inc. v. Bechtold,* 251 Or 543, 446 P2d 120 (1968), which it argues distinguishes the effect on a guarantor of a *breach* of contract from a *modification* of a contract. It contends that a guarantor is discharged when a *modification* of the agreement that he guarantees materially increases his risk, *Lloyd Corporation v. O'Connor,* 258 Or 33, 479 P2d 744 (1971); *Nike, Inc. v. Spencer,* 75 Or App 362, 707 P2d 589, *rev den* 300 Or 451 (1985), or when the agreement is *breached*—with no requirement that the breach materially increase his risk.[8] It is true

---

[7] Plaintiffs argue that, if there was a breach of the original contract or the March 1 modification, HIC waived its rights when it agreed to the July 9 modification. Given our disposition of the case, we need not decide that question.

[8] In its third affirmative defense, HIC alleged that plaintiffs' breaches materially increased its risk, thereby discharging it as guarantor.

that *Lloyd* and *Nike* involved a modification and required an increase in the guarantor's risk before he could be discharged. It is also true that *Ebco* involved a breach that the court held discharged the guarantor. However, none of the cases makes the distinction that HIC urges, and HIC advances no reason why such a distinction should exist.

In *Ebco,* the court held that a guarantor of payment to the seller of a laundry business was discharged when the seller breached its contract with the purchaser "under the familiar rule that a guarantor is discharged if the conditions of the obligation which he guarantees are not performed." 251 Or at 547. Although it is true that the court did not expressly state that the rule is not limited to a breach that increases the risk of the guarantor, the facts on which the court relied clearly demonstrate that the breach did increase the guarantor's risk. The court found that the debtor's survival depended on the seller's fulfillment of the condition that it breached and that the guarantor's interest also depended on the seller's compliance with the contract provision. Moreover, the court cited 10 Williston, *Contracts* 776, § 1243 (3d ed 1967), as authority for the "familiar rule." Williston states that "any breach by the creditor of his contract with the principal, *if he thereby varies the surety's risk,* discharges him." (Emphasis supplied.) Here, there is evidence to support the trial court's finding that plaintiffs' conduct did *not* materially increase the risk to HIC. Accordingly, the court erred when it held that plaintiffs' breach that did not materially increase HIC's risk discharged it.

■ HIC cross-assigns as error that the court denied its motion to dismiss made at the close of all the evidence. That assignment is properly before us. *See Artman v. Ray,* 263 Or 529, 534, 501 P2d 63, 502 P2d 1376 (1972). Its motion was based on the ground that plaintiffs' breaches increased its risk. Because we have held that the court's findings to the contrary are supported by evidence in the record, the court did not err when it denied HIC's motion to dismiss.

Reversed and remanded.